# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: March 3, 2016**

**NO. S-1-SC-34726**

**DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR MORGAN
STANLEY ABS CAPITAL 1 INC. TRUST 2006-NC4,**

Plaintiff-Petitioner,

**v.**

**JOHNNY LANCE JOHNSTON,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI
Manuel I. Arrieta, District Judge**

Holland & Hart LLP
Larry J. Montaño
Santa Fe, NM

Murr Accomazzo & Siler, PC
Eric P. Accomazzo
Jamie G. Siler
James P. Eckels
Denver, CO

for Petitioner

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Respondent


Daniel Yohalem
Santa Fe, NM

Santa Fe Neighborhood Law Center
Frederick M. Rowe
Santa Fe, NM

Katherine Elizabeth Murray
Santa Fe, NM

Joshua David Schwartz
Santa Fe, NM

for Amici Curiae Santa Fe Neighborhood Law Center,
Mary and Joseph Romero, Professor Nathalie Martin,
United South Broadway, Somos Un Pueblo Unidos,
The Santa Fe Neighborhood Network, Homewise, Inc.,
Santa Fe Area Home Builders Association, and
New Mexico Foreclosure Defense Group

**OPINION**

**CHÁVEZ, Justice.**

{1}    This case requires us once again to examine traditional rules of jurisdiction and standing in the context of modern mortgage foreclosure actions. In *Bank of New York v. Romero*, 2014-NMSC-007, ¶¶ 19-38, 320 P.3d 1, we concluded that the plaintiff did not establish standing to foreclose on the defendant's home when it could not prove that it had the right to enforce the promissory note on the mortgage at the time it filed suit. *See* NMSA 1978, § 55-3-301 (1992) (defining " '[p]erson entitled to enforce' [a negotiable] instrument"). In the present case, Petitioner Deutsche Bank National Trust Company, acting as trustee for Morgan Stanley ABS Capital 1 Inc. Trust 2006-NC4 (Deutsche Bank), filed a complaint seeking foreclosure on the home of Respondent Johnny Lance Johnston (Homeowner) and attached to its complaint an unindorsed note, mortgage, and land recording, both naming a third party as the mortgagee. Deutsche Bank later provided documentation and testimony showing that (1) a document assigning the mortgage to Deutsche Bank was dated *prior* to the filing of the complaint but recorded *after* the complaint was filed; (2) Deutsche Bank possessed a version of the note indorsed in blank at the time of trial; and (3) a servicing company began servicing the loan to Homeowner on behalf of Deutsche Bank prior to the filing of the complaint. After receiving this evidence, the district

court found that Deutsche Bank had standing to foreclose on Homeowner's property. The Court of Appeals disagreed, opining that "standing is a jurisdictional prerequisite for a cause of action," and concluded that the evidence provided by Deutsche Bank did not establish its standing as of the time it filed its complaint. *Deutsche Bank Nat'l Tr. Co. v. Beneficial N.M. Inc.*, 2014-NMCA-090, ¶¶ 8, 13-15, 335 P.3d 217, *cert. granted*, 2014-NMCERT-008. Although we hold that standing is not a jurisdictional prerequisite in this case, we nonetheless affirm the Court of Appeals's ultimate conclusion that the evidence provided by Deutsche Bank did not establish standing.

## I. BACKGROUND

{2} On January 31, 2006, Homeowner refinanced his home by executing a promissory note made payable to New Century Mortgage Corporation (New Century). The note was secured by a mortgage on Homeowner's property in Las Cruces. Homeowner defaulted on his loan payments beginning in August 2008, and received a letter notifying him of his default dated October 12, 2008 from American Servicing Company (ASC), a loan servicing company.

{3} On February 24, 2009, Deutsche Bank filed a complaint for foreclosure. Deutsche Bank attached two exhibits to its complaint: (1) a January 31, 2006 promissory note made payable to New Century which did not contain an indorsement;

2

and (2) a January 31, 2006 mortgage on Homeowner's property recorded in the Doña Ana County Office of the County Clerk on February 7, 2006 by New Century, which the County Clerk also names as the mortgagee. In its complaint, Deutsche Bank alleged that it owned the mortgage through assignment and was a holder in due course of the note. Homeowner "acknowledge[d]" this allegation in his pro se answer to Deutsche Bank's complaint.

{4} On August 11, 2010, Homeowner filed an amended motion to dismiss for lack of standing, contending that Deutsche Bank "did not show ownership of the note, nor a security interest," and that it provided no other evidence that it was the holder of the note as of the date that it filed its complaint. Deutsche Bank's response to Homeowner's motion to dismiss attached an assignment of mortgage document dated February 7, 2006 and recorded in Doña Ana County on December 9, 2009 as proof that Deutsche Bank held the note at the time it filed the complaint.[1]

{5} The district court set the hearing on Homeowner's motion to dismiss for the same day as trial. After concluding that Homeowner's arguments on the motion to

---

[1]Deutsche Bank's response to Homeowner's motion to dismiss claimed that the assignment of mortgage was recorded on January 9, 2009, which would have been prior to its February 24, 2009 complaint. However, Deutsche Bank did not provide any evidence establishing that the assignment was recorded on that date.

dismiss would be similar to his arguments on the merits, the district court took Homeowner's motion under advisement and agreed to consider it during the bench trial on the merits.

{6}     At trial, Deutsche Bank offered further evidence to prove that it owned the note. First, Deutsche Bank proffered a version of the January 31, 2006 note that was indorsed in blank by New Century. This new note was identical to the original note attached to Deutsche Bank's complaint except that the note attached to the complaint did not contain any indorsement. Second, Deutsche Bank offered the testimony of Erin Hirzel Roesch, a litigation specialist for the loan servicing company. Ms. Roesch was employed by Wells Fargo Bank, NA, which she testified is effectively the same company as ASC. Ms. Roesch testified based on her review of the file on Homeowner's mortgage. She testified that because the proffered note was indorsed in blank, Deutsche Bank, as holder of the note, could act as the lender of the note; that Deutsche Bank was assigned the mortgage on February 7, 2006; and that her company began servicing the loan in July 2006.

{7}     The district court concluded that Deutsche Bank was "the current holder of the Note and Mortgage." The court also concluded that Homeowner was "in default in payment of the principal and interest on the Note and Mortgage described in

4

[Deutsche Bank's] Complaint." Based on these findings, the district court then held that Deutsche Bank was entitled to a foreclosure judgment on Homeowner's property.

{8} The Court of Appeals reversed and remanded to the district court "with instructions to vacate its judgment of foreclosure" because Deutsche Bank lacked standing to foreclose. *Deutsche Bank Nat'l Tr. Co.*, 2014-NMCA-090, ¶¶ 15, 18. The Court of Appeals reasoned that under *Bank of New York*, 2014-NMSC-007, ¶ 17, "standing is a jurisdictional prerequisite for a cause of action and must be established at the time the complaint is filed." *Deutsche Bank Nat'l Tr. Co.*, 2014-NMCA-090, ¶ 8. Accordingly, "to establish standing to foreclose, a lender must show that, *at the time it filed its complaint for foreclosure*, it had: (1) a right to enforce the note, which represents the debt, and (2) ownership of the mortgage lien upon the debtor's property." *Id.* (emphasis added). In practical terms, the Court of Appeals's decision requires a party seeking to establish its right to enforce a note to either produce an original or properly indorsed note with its complaint for foreclosure or to later introduce a dated indorsed note executed prior to the initiation of the foreclosure suit. *See id.* ¶ 12. The Court concluded that in this case, "neither the unindorsed copy of the note produced with the foreclosure complaint nor the indorsed note produced at trial were sufficient to show that [Deutsche Bank] held the note when it filed the

5

complaint" and that the assignment of mortgage proffered by Deutsche Bank had "no bearing on the validity or the timing of the note's indorsement." *Id.* ¶¶ 13-14.

{9} We granted Deutsche Bank's petition for certiorari to review (1) whether standing is jurisdictional in mortgage foreclosure cases; (2) whether the Court of Appeals erred in interpreting *Bank of New York* to require a plaintiff who presents an original, indorsed-in-blank promissory note at trial to establish that it is the holder of the note by presenting an indorsement dated prior to the filing of the complaint or by attaching an indorsed copy of the note to the complaint; and (3) whether the Court of Appeals erred by concluding that an assignment of mortgage dated prior to the filing of the complaint cannot by itself establish standing. While we take this opportunity to clarify that standing is not a jurisdictional prerequisite in mortgage foreclosure cases in New Mexico, we otherwise affirm the result reached by the Court of Appeals based on principles of prudential standing.

**II.    DISCUSSION**

**A.    The Doctrine of Standing in New Mexico**

{10}    Deutsche Bank challenges the Court of Appeals's statement that "standing is a jurisdictional prerequisite for a cause of action." *Deutsche Bank Nat'l Tr. Co.*, 2014-NMCA-090, ¶ 8 (citing *Bank of N.Y.*, 2014-NMSC-007, ¶ 17). Deutsche Bank

6

accurately observes that our jurisprudence has previously recognized that standing is jurisdictional in the context of statutory causes of action rather than all causes of action. *Bank of N.Y.*, 2014-NMSC-007, ¶ 17. With that distinction in mind, Deutsche Bank then argues that the cause of action to enforce a promissory note existed at common law and was not created by statute. Deutsche Bank concludes that standing in this case therefore cannot be jurisdictional. We agree with Deutsche Bank that standing is not jurisdictional in this case because the cause of action to enforce a promissory note was not created by statute. Therefore, only prudential rules of standing apply to the claims in this case.

{11}    As a general rule, "standing in our courts is not derived from the state constitution, and is not jurisdictional." *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9, 144 N.M. 471, 188 P.3d 1222. However, " '[w]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action.' " *Id.* ¶ 9 n.1 (quoting *In re Adoption of W.C.K.*, 2000 PA Super 68, ¶ 6, 748 A.2d 223 (Pa. Super. Ct. 2000), *abrogated by In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168, 1168 n.5 (Pa. 2006)). In light of the conclusions reached by the Court of Appeals in this case, *Deutsche Bank*

7

*National Trust Co.*, 2014-NMCA-090, ¶ 8, we take this opportunity to clarify our statements in *Bank of New York*, 2014-NMSC-007, ¶ 17, and hold that mortgage foreclosure actions are not created by statute. Therefore, the issue of standing in those cases cannot be jurisdictional.

{12}     The cause of action to enforce a promissory note originated at common law and already existed when New Mexico adopted the Uniform Commercial Code (UCC) in 1961. *See Kepler v. Slade*, 1995-NMSC-035, ¶ 14, 119 N.M. 802, 896 P.2d 482 ("Under the common law rule, an action to foreclose on real property is separate and distinct from an action to recover on an underlying promissory note."); *Edwards v. Mesch*, 1988-NMSC-085, ¶ 4, 107 N.M. 704, 763 P.2d 1169 ("The rights of a holder of a promissory note were discussed by this court as early as [1853]."). New Mexico's adoption of the UCC did not create the rights and remedies associated with actions to enforce promissory notes, but instead merely codified those rights and clarified their scope in the interest of attaining uniformity with other states that had adopted the UCC. *See Males v. W.E. Gates & Assocs.*, 504 N.E.2d 494, 495 (Ohio Misc. 2d 1985) ("[A]ctions on promissory notes are rooted in the common law of contracts. The Uniform Commercial Code represents the fifty states' effort toward achieving uniformity and certainty in commercial transactions. Thus, this action is

8

not a representative of a right created by statute, such as a wrongful death action."). *See also* 1A C.J.S. Actions § 37 (2015) (noting that the UCC "has been held to displace common-law remedies even though *it does not create new causes of action*, where it provides a comprehensive remedy" (emphasis added) (footnotes omitted)). Indeed, the UCC recognizes the continuing vitality of common law "principles of law and equity" which supplement its provisions. Section 55-1-103(b). *See also Venaglia v. Kropinak*, 1998-NMCA-043, ¶¶ 11-12, 125 N.M. 25, 956 P.2d 824 ("There are two principal sources of law governing the rights and duties of the parties with respect to a guarantee of a promissory note. One is Article 3 of the Uniform Commercial Code. . . . The other is the common law."). Thus, an action to enforce a promissory note fell within the district court's general subject matter jurisdiction in this case because it was not created by statute.

{13}    When standing does not act as a jurisdictional threshold, as in this case, prudential considerations govern our analysis. *See ACLU of N.M.*, 2008-NMSC-045, ¶ 9. While New Mexico courts are not subject to the jurisdictional limitations imposed by Article III, Section 2 of the United States Constitution, the standing jurisprudence in our courts has "long been guided by the traditional federal standing analysis." *ACLU of N.M.*, 2008-NMSC-045, ¶ 10. "Thus, at least as a matter of

9

judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case." *Id.*; *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) ("To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."). However, it is well settled that New Mexico courts are also not bound by the limitations on standing that are constitutionally imposed on federal courts and we have occasionally granted standing when it would not otherwise exist under the federal analysis, most notably in instances where a case presents a "question of fundamental importance to the people of New Mexico." *See, e.g.*, *Baca v. N.M. Dep't of Pub. Safety*, 2002-NMSC-017, ¶ 4, 132 N.M. 282, 47 P.3d 441 (holding that validity of the Concealed Handgun Carry Act raised important constitutional question sufficient to ignore normal limitations on standing (internal quotation marks and citation omitted)); *State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶¶ 1-2, 15, 120 N.M. 562, 904 P.2d 11 (claim that the Governor lacked authority to enter into various compacts pursuant to the Indian Gaming Regulatory Act was of sufficient public importance to confer standing without examining the standing of individual litigants);

10

*State ex rel. Sego v. Kirkpatrick*, 1974-NMSC-059, ¶ 7, 86 N.M. 359, 524 P.2d 975 (conferring standing under this Court's discretionary power due to great public importance of constitutional challenge to partial vetoes); *State ex rel. Gomez v. Campbell*, 1965-NMSC-025, ¶¶ 15, 18, 75 N.M. 86, 400 P.2d 956 (concluding that the plaintiffs did not establish standing but proceeding to the merits of the constitutional question in that case due to its "great public interest").

{14}    In *ACLU of New Mexico*, we reaffirmed our adherence to the federal three-pronged approach in cases that do not present issues of fundamental public importance; we also recognized that the injury in fact requirement in particular is "deeply ingrained in New Mexico jurisprudence." 2008-NMSC-045, ¶¶ 10-22. Even a slight injury establishes an injury in fact sufficient to confer standing. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-005, ¶ 12, 126 N.M. 788, 975 P.2d 841. However, we have repeatedly emphasized that the injury in fact prong of our standing analysis "[r]equir[es] that the party bringing suit show that he [or she] is injured or threatened with injury in a direct and concrete way" as a matter of "sound judicial policy." *ACLU of N.M.*, 2008-NMSC-045, ¶ 19 (internal quotation marks and citation omitted); *see also N.M. Right to Choose/NARAL*, 1999-NMSC-005, ¶ 12 (litigant generally must show direct injury to establish standing). Although the UCC's

11

definition of who may enforce a note does not create a jurisdictional prerequisite in this case, it nonetheless guides our determination of whether the plaintiff can articulate a direct injury that the cause of action is intended to address. *See Bank of N.Y.*, 2014-NMSC-007, ¶¶ 19-38 (analyzing whether foreclosure plaintiff had standing under provisions of Section 55-3-301 defining who is legally entitled to enforce a promissory note); *see also Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶¶ 10-11, 121 N.M. 764, 918 P.2d 350 (determining that the question of whether a party has standing to sue is not distinct from whether that party can assert a cause of action under a particular statute). The UCC provides that there are three scenarios in which a person is entitled to enforce a negotiable instrument such as a promissory note: (1) when that person is the holder of the instrument; (2) when that person is a nonholder in possession of the instrument who has the rights of a holder; and (3) when that person does not possess the instrument but is still entitled to enforce it subject to the lost-instrument provisions of UCC Article 3. Section 55-3-301. To show a "direct and concrete" injury, Deutsche Bank needed to establish that it fell into one of these three statutory categories that would establish both its right to enforce Homeowner's promissory note and its basis for claiming that it suffered a direct injury from Homeowner's alleged default on the note. *ACLU of N.M.*, 2008-

12

NMSC-045, ¶ 19; *see also Bank of N.Y.*, 2014-NMSC-007, ¶ 19.

**B.    Homeowner Did Not Waive the Issue of Standing**

{15}    Deutsche Bank contends that because standing was not a jurisdictional prerequisite in this case, the issue "may be and was admitted and waived" because Homeowner " 'acknowledge[d]' " Deutsche Bank's allegation within its complaint that Deutsche Bank owned both the note and the mortgage. We agree that our determination that standing is not jurisdictional in this case opens up the possibility that Homeowner could have waived the issue, but disagree that Homeowner waived it here.

{16}    Arguments based on a lack of prudential standing are analogous to asserting that a litigant has failed to state a legal cause of action. As we have previously discussed, we generally require "injury in fact, causation, and redressability" to establish standing. *ACLU of N.M.*, 2008-NMSC-045, ¶ 10. If these elements are not met, as a logical matter, a plaintiff generally cannot show that he or she has stated a cause of action entitling him or her to a remedy. *See Key*, 1996-NMSC-038, ¶¶ 10-11. Thus, while a plaintiff's failure to state a cognizable claim for relief and a plaintiff's lack of prudential standing are not strictly jurisdictional, both implicate the "properly limited . . . role of courts in a democratic society" and are relevant concerns

13

throughout a litigation. *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 16, 149 N.M. 42, 243 P.3d 746 (internal quotation marks and citation omitted). Under Rule 1-012(H)(2) NMRA, "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered . . . or by motion for judgment on the pleadings, or at the trial on the merits." We hold that Rule 1-012(H)(2) applies to issues of prudential standing and precludes any waiver of standing prior to the completion of a trial on the merits. *Sundance Mech. & Util. Corp. v. Atlas*, 1990-NMSC-031, ¶ 25, 109 N.M. 683, 789 P.2d 1250.

{17} In this case, Homeowner did not waive standing because he raised the issue in a motion filed on August 11, 2010, over a month before the September 16, 2010 trial. In addition, the district court considered Homeowner's challenge to Deutsche Bank's standing during the trial on the merits. Homeowner therefore raised the issue of standing both by motion and at the trial on the merits, either of which would independently constitute a timely assertion of this defense. Rule 1-012(H)(2).

{18} Further, we are not convinced by Deutsche Bank's argument that Homeowner waived his right to challenge its standing because in his answer to Deutsche Bank's complaint, he "acknowledge[d]" Deutsche Bank's allegation that it owned Homeowner's note and mortgage through assignment. Even under the generous

14

assumption that Homeowner's "acknowledge[ment]" that Deutsche Bank was entitled to enforce the note was an admission of that fact, we disagree with Deutsche Bank's premise that Homeowner could have waived this defense through his initial responsive pleading. When standing is a prudential consideration, it can be raised for the first time at any point in an active litigation, just like a defense of failure to state a claim, and unlike defenses relating to personal jurisdiction, venue, and insufficient service of process, all of which must be raised in an initial or amended responsive pleading. *Compare* Rule 1-012(H)(2) *with* Rule 1-012(H)(1).

{19}    Moreover, it would be nonsensical to place any burden on a foreclosure defendant to know whether the party seeking foreclosure is actually entitled to do so. For example, in the present case, Homeowner signed his financing agreement with New Century; received correspondence regarding his defaults on his mortgage payments from ASC, the loan servicing company, which was apparently also the same company as Wells Fargo Bank, N.A.; and he was ultimately sued by Deutsche Bank. Under these circumstances, there is no indication that either Homeowner or any defendant being sued over a securitized mortgage, for that matter, would be in a position to have personal knowledge of who had the right to enforce his or her mortgage. In addition, as we will explain, allowing a foreclosure defendant to waive

15

the issue of standing would not only vitiate that homeowner's rights, but could in fact cloud the title of the underlying property and lead to other problems to the detriment of New Mexico's property system as a whole. Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 662 (2013). The important societal interests in maintaining the integrity of the property system, protecting subsequent purchasers of the property, and the minimal probative value of the alternative, convince us that a foreclosure defendant cannot voluntarily waive a challenge to the plaintiff's standing during the course of the litigation.[2]

**C.      Standing Must Be Established as of the Date of Filing Suit in Mortgage Foreclosure Cases**

{20}      Before turning to a specific analysis of Deutsche Bank's standing in this case, we will clarify why standing must be established as of the time of filing suit in mortgage foreclosure cases, despite our determination that standing is not a jurisdictional issue in such cases. *Bank of New York*, relying on *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-71, 570 n.5 (1992), states that "standing to bring a

---

[2]As we will explain in Section II, Part E, a foreclosure defendant effectively waives his right to challenge the plaintiff's standing once a final judgment has been entered.

16

foreclosure action" must exist "at the time [a plaintiff] file[s] suit." 2014-NMSC-007, ¶ 17. Deutsche Bank asks this Court to revisit this requirement, contending that (1) unlike in federal courts, standing in New Mexico courts is not a jurisdictional issue such that standing does not necessarily have to exist at the time of filing; and (2) as a prudential matter, requiring foreclosure plaintiffs to establish that they had standing at the time of filing contravenes our interest in judicial economy. Neither argument advanced by Deutsche Bank convinces us to deviate from well-established principles of standing, which are solidly supported by several prudential and policy considerations that arise in the particular context of mortgage foreclosure actions.

{21} There are sound policy reasons for requiring strict compliance with the traditional procedural requirement that standing be established at the time of filing in mortgage foreclosure actions. This procedural safeguard is vital because the securitization of mortgages has given rise to a pervasive failure among mortgage holders to comply with the technical requirements underlying the transfer of promissory notes, and more generally the recording of interests in property. *See* Elizabeth Renuart, *Uneasy Intersections: The Right to Foreclose and the U.C.C.*, 48 Wake Forest L. Rev. 1205, 1209-10 (2013) ("[T]he failure to deliver the original notes with proper indorsements [to assignees], the routine creation of unnecessary lost

17

note affidavits, the destruction of the original notes, and the falsification of necessary indorsements . . . is widespread."). Under these circumstances, not even the plaintiffs may be sure if they actually own the notes they seek to enforce. As Professor Levitin notes, Article 3 of the UCC and the land records recording system are each based upon the notion of strict "compliance with demonstrative legal formalities to achieve property rights," which admittedly carries "up-front costs," but also ensures "a high degree of security in the property rights, both vis-à-vis other competing claimants to the property rights and as to the ability to enforce the mortgage property rights." Levitin, *supra*, at 648. This regime is also desirable for its simplicity—"possession clarifies title because there can be only one possessor at a time," while "[i]ndorsement creates a chain of title that travels with the instrument and provides an easy, objective manner for establishing who has rights to the instrument." Levitin, *supra*, at 662. These formalities are strengthened by strict standing requirements. Otherwise, institutions could potentially cloud title by foreclosing on a property upon which they do not possess the right to foreclose.[3]

---

[3]Professor Levitin illustrates this idea with the following example:

If the seller is not the person entitled to foreclose, the foreclosure sale is no different from a sale of the Brooklyn Bridge. Accordingly, the foreclosure-sale purchaser has no ability to transfer title to the property,

18

{22} Indeed, standing in foreclosure actions "is not a mere procedural detail"; it protects homeowners against double liability such as "when the wrong party sells the home and the note holder later appears seeking full payment on the note," or when a homeowner faces multiple lawsuits in different jurisdictions. Renuart, *supra*, at 1212. Reducing the potential for double liability is also beneficial to the property system at large because "[i]f a debtor fears multiple satisfaction of the same debt, the debtor will not borrow, thereby chilling economic activity," whereas strict compliance with UCC requirements "enables verification of the terms of the obligation[,] and hence greater ability to enforce[, and] provid[es] a mechanism for verifying the discharge of the obligation." Levitin, *supra*, at 664. In our view, the minor up-front compliance costs that foreclosure plaintiffs will incur by confirming that they have the proper documentation *before* filing suit are a small price to pay for protecting the rights of New Mexico homeowners and the integrity of the State's title system by requiring strict and timely compliance with long-standing property law requirements. To be clear, perhaps despite recent industry practices, this is *not* an

no matter [his or] her equities, because [he or] she lacks title, just like the hapless buyer of the Brooklyn Bridge.

Levitin, *supra*, at 646.

19

additional requirement that we impose punitively; it is simply a symptom of compliance with long-standing rules. *See* Levitin, *supra*, at 650-51 ("A mortgage loan involves a bundle of rights, including procedural rights. These procedural rights are not merely notional; they are explicitly priced by the market. Mortgage finance availability and pricing is statistically correlated with variations in procedural protections for borrowers. Retroactively liberalizing the rules for mortgage enforcement creates an unearned windfall for mortgagees." (footnote omitted)). In other words, requiring that standing be established as of the time of filing provides strong and necessary incentives to help ensure that a note holder will not proceed with a foreclosure action before confirming that it has a right to do so.

{23} Further, although we are sympathetic to the additional burdens this may impose on an entity seeking to foreclose on a home, New Mexico is hardly alone among the states in requiring a foreclosure plaintiff to prove that it was entitled to enforce the note when it filed suit. *See* Levitin, *supra*, at 642-44 ("[T]here is broad agreement among courts that some sort of standing or similar status is necessary for both judicial and nonjudicial foreclosure . . . . There is also broad agreement that the party bringing the foreclosure action or sale *must have standing at the time the litigation . . . is commenced*." (emphasis added) (footnote omitted)). For example, in *Federal Home*

20

*Loan Mortgage Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶¶ 24-25, 979 N.E.2d 1214, *overruling on other grounds recognized by Bank of New York Mellon v. Grund*, 2015-Ohio-466, ¶¶ 23-24, 27 N.E.3d 555, the Supreme Court of Ohio clarified that, under Ohio law, standing must be analyzed as of the commencement of an action in mortgage foreclosure cases. *See also U.S. Bank Nat'l Ass'n v. McConnell*, 305 P.3d 1, 8 (Kan. Ct. App. 2013) (concluding that the foreclosure plaintiff had standing because it was undisputed that the plaintiff held the note *prior* to the date that suit was filed). Therefore, "[p]ost-filing events that supply standing that did not exist on filing may be disregarded . . . despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress." *Fed. Home Loan Mortg. Corp.*, 2012-Ohio-5017, ¶ 26 (first alteration in original) (internal quotation marks and citation omitted). The Supreme Court of Oklahoma has similarly explained that if a foreclosure plaintiff "became a person entitled to enforce the note . . . after the foreclosure action was filed," the plaintiff's initial lack of standing could not be cured and the proper remedy was to dismiss the case without prejudice. *Deutsche Bank Nat'l Tr. v. Brumbaugh*, 2012 OK 3, ¶ 11, 270 P.3d 151; *see also McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. Dist. Ct. App. 2012) ("While it is true that standing to foreclose can be demonstrated by the filing of the

21

original note with a special endorsement in favor of the plaintiff, this does not alter the rule that a party's standing is determined at the time the lawsuit was filed. Stated another way, the plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed." (internal quotation marks and citation omitted)); *Deutsche Bank Nat'l Tr. Co. v. Mitchell*, 27 A.3d 1229, 1234-36 (N.J. Super. Ct. App. Div. 2011) (stating that a plaintiff must have standing at the time the foreclosure complaint is filed, and a lack of standing cannot be cured by showing that a plaintiff acquired standing after the complaint was filed); *Wells Fargo Bank, N.A. v. Marchione*, 887 N.Y.S.2d 615, 616-17 (N.Y. App. Div. 2009) (noting that a plaintiff-assignee lacked standing where the note and mortgage were assigned to the plaintiff after commencement of the foreclosure action); *U.S. Bank Nat'l Ass'n v. Kimball*, 2011 VT 81, ¶¶ 12-20, 27 A.3d 1087 (stating that standing must be established at the time of filing suit, and it did not contravene the interest of judicial efficiency to dismiss the complaint of a foreclosure plaintiff who acquired standing after the complaint had been filed). As a result, we conclude that it is not presumptuous to require, as do a substantial number of other states, that a company claiming to be a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement

22

of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint or producing a note dated before the filing of the complaint at some appropriate time in the litigation. We agree with the Vermont Supreme Court, which opined that "[i]t is neither irrational nor wasteful to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit." *Kimball*, 2011 VT 81, ¶ 20.

{24} Deutsche Bank also argues that our insistence that it demonstrate that a note indorsed in blank was indorsed prior to the time of filing improperly adds a new requirement that indorsements be dated, in contravention of the UCC. *See Deutsche Bank Nat'l Tr. Co.*, 2014-NMCA-090, ¶ 12 (holding that "if [a] lender produces the indorsed note after filing the complaint, the indorsement must be dated to show that the indorsement was executed prior to the initiation of the foreclosure suit"). We agree with Deutsche Bank that the UCC does not require that instruments be dated. *See* NMSA 1978, § 55-3-113(b) (1992) ("If an instrument is undated, its date is the date of its issue or, in the case of an unissued instrument, the date it first comes into possession of a holder."). However, Deutsche Bank conflates the need to date a negotiable instrument, so as to create an enforceable promissory note, with the

23

requirement that Deutsche Bank establish that it was entitled to enforce the instrument at the time of filing. Because the time of filing requirement does not affect the validity of an underlying negotiable instrument, *see Deutsche Bank Nat'l Tr. Co.*, 2014-NMCA-090, ¶ 12, this rule does not add a new requirement under the UCC.

{25} Deutsche Bank additionally contends that "when a plaintiff presents the original note to the court with a blank indorsement, the plaintiff establishes it is then the holder of the note, and is entitled to enforce the note and foreclose the mortgage." Deutsche Bank is correct that the holder of a note indorsed in blank may, as a general matter, enforce the note. *See* § 55-3-301; NMSA 1978, § 55-3-205(b) (1992). However, Deutsche Bank again conflates two distinct concepts: whether it may, as the holder of a note indorsed in blank, enforce the note and whether it can establish that it owned the note at the time of filing. If Deutsche Bank had presented a note indorsed in blank with its initial complaint, it would be entitled to a presumption that it could enforce the note at the time of filing and thereby establish standing. However, Deutsche Bank did not produce a note indorsed in blank when it filed suit in this case, and the subsequent production of a blank note does not prove that Deutsche Bank possessed the blank note *when it filed suit*.

{26} We further disagree with Deutsche Bank's argument that the Court of

24

Appeals's opinion in this case, *Deutsche Bank Nat'l Tr. Co.*, 2014-NMCA-090, ¶¶ 11-13, requires that a "plaintiff conclusively establish its standing upon first filing the complaint." Deutsche Bank contends that this requirement would contravene well-established notice pleading standards in New Mexico, which require a complaint to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 1-008(A)(2) NMRA. According to Deutsche Bank, it should satisfy minimum pleading requirements for a foreclosure plaintiff to merely allege that it is the holder of the note, and then later prove this fact through more detailed documentation, either at trial or in connection with a dispositive motion. We agree with Deutsche Bank that "it is only at trial or in a dispositive motion that plaintiffs are required to *prove* the necessary elements of their claims," including standing, and that a bare statement that the plaintiff holds the note may satisfy pleading standards. *See N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342 ("In reviewing the district court's decision to dismiss for failure to state a claim, we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint's sufficiency.").

{27} However, this is an issue of proof rather than pleading standards. The elements of standing

are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [and therefore] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan*, 504 U.S. at 561. For example, a foreclosure plaintiff may satisfy pleading requirements by simply alleging that it is the holder of the note without attaching any additional documentary evidence, but when a defendant subsequently raises the defense that the plaintiff lacks standing to foreclose, the plaintiff must then prove that it held the note *at the time of filing*. Attaching the note to the complaint is not the only means of proving that the plaintiff held the note at the time of filing because standing can also be proven through a dated indorsement establishing when the note was indorsed to the plaintiff. Therefore, neither *Bank of New York* nor the Court of Appeals's opinion in this case establish an additional pleading requirement, as Deutsche Bank argues, but rather set forth requirements that must be met to prove standing, should that issue be raised by the defendant or *sua sponte* by the Court.[4]

**D.     Deutsche Bank Did Not Establish Standing**

---

[4]In instances where a foreclosure plaintiff seeks a default judgment, courts should raise the standing issue *sua sponte* and carefully scrutinize the plaintiff's standing to safeguard the integrity of New Mexico's property system and protect subsequent bona fide purchasers.

26

{28}    Deutsche Bank argues that substantial evidence supports the district court's determination that Deutsche Bank had standing to pursue its foreclosure complaint against Homeowner. We review the district court's determination that Deutsche Bank had standing under a substantial evidence standard of review. *Bank of N.Y.*, 2014-NMSC-007, ¶ 18. " 'Substantial evidence' means relevant evidence that a reasonable mind could accept as adequate to support a conclusion. This Court will resolve all disputed facts and indulge all reasonable inferences in favor of the trial court's findings." *Id.* (internal quotation marks and citations omitted). However, "[w]hen the resolution of the issue depends upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to interpret the evidence." *Id.* (alteration in original) (internal quotation marks and citation omitted).

{29}    Deutsche Bank contends that there was sufficient evidence to establish standing for two reasons. First, Deutsche Bank argues that "the Assignment of Mortgage in this case . . . evidence[d] the timing of the transfer of the note." Second, Deutsche Bank avers that other corroborating evidence presented at trial, in conjunction with the assignment of mortgage, established that it owned the note at the time of filing. Deutsche Bank's arguments do not persuade us that there is substantial evidence to support the district court's determination that Deutsche Bank had

27

standing.

{30} In response to Homeowner's motion to dismiss for lack of standing, Deutsche Bank produced an assignment of mortgage dated February 7, 2006. Deutsche Bank's proffer of the February 7, 2006 assignment of mortgage in this case was insufficient to establish standing because (1) the assignment of mortgage does not establish that Deutsche Bank was injured for the purposes of standing; and (2) it does not prove if or when the note was transferred. As we have previously stated, to establish standing we require that a plaintiff show that he or she has actually suffered a direct and concrete injury. *ACLU of N.M.*, 2008-NMSC-045, ¶ 19 (citation omitted). "A party who only has the mortgage but no note has not suffered any injury given that bare possession of the mortgage does not endow its possessor with any enforceable right absent possession of the note." *BAC Home Loans Servicing, LP v. McFerren*, 2013-Ohio-3228, ¶ 12, 6 N.E.3d 51 (citing Restatement (Third) of Prop.: Mortgages § 5.4(e), at 385 (1996) ("[I]n general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation.")). Consequently, "possession of the mortgage is of no import unless there is possession of the note." *BAC Home Loans Servicing, LP*, 2013-Ohio-3228, ¶ 12. Moreover, because an assignment of mortgage does not "effect an assignment of a note," an assignment of mortgage does

28

not prove "transfer of [a] note." *Bank of Am., NA v. Kabba*, 2012 OK 23, ¶ 9, 276 P.3d 1006. As a result, the date that Homeowner's *mortgage* was assigned to Deutsche Bank does not establish a corresponding date indicating when the *note* was transferred to Deutsche Bank, or even *if* the note was transferred.

{31} Deutsche Bank's proffer of additional evidence to establish standing similarly fails to meet the threshold for substantial evidence. First, Deutsche Bank contends that because Ms. Roesch, an employee of a loan servicing company, "testified that the Assignment of Mortgage was dated February 7, 2006," Deutsche Bank established ownership of the note at the time of filing. Once again, this assertion fails because the date on the assignment of mortgage does not establish either when or whether Deutsche Bank obtained the right to enforce the note. *See id.* Second, Deutsche Bank argues that Ms. Roesch's testimony that her company began servicing the note in 2006 proves that Deutsche Bank owned the note prior to its February 2009 complaint. This testimony does not establish that Deutsche Bank had standing. Again, the assertion that an entity allegedly started servicing the loan on behalf of Deutsche Bank prior to the time of filing suit does not prove anything regarding the actual ownership of the note, and further, because "falsification of necessary indorsements" appears to be a "widespread" phenomenon, Renuart, *supra*, at 1210,

there is reason to believe that creditors could potentially seek to enforce notes that they do not hold under the law. Thus, the additional evidence supplied by Deutsche Bank does not bear on whether Deutsche Bank actually owned the note at the time of filing, nor does it establish when the necessary indorsements were made, so that whether Deutsche Bank had the right to enforce the note as of February 24, 2009 remains unclear.

{32} Finally, the unindorsed note attached to Deutsche Bank's original complaint did not establish standing. "Possession of an unindorsed note made payable to a third party does not establish the right of enforcement, just as finding a lost check made payable to a particular party does not allow the finder to cash it." *Bank of N.Y.*, 2014-NMSC-007, ¶ 23. In addition, as we have discussed, the undated indorsed note that Deutsche Bank presented at trial did not prove that Deutsche Bank had standing when it filed its complaint. Because Deutsche Bank failed to provide evidence establishing its right to enforce the note on Homeowner's home, we hold that the district court's determination that Deutsche Bank established standing to foreclose was not supported by substantial evidence, and we accordingly reverse the district court's decision and affirm the result reached by the Court of Appeals.

**E.    Completed Foreclosure Judgments Should Not Be Voided for Lack of Standing**

30

{33}     We also take this opportunity to address Deutsche Bank's assertion that "several lower courts . . . have vacated long-completed foreclosure judgments under Rule 1-060(B) NMRA[,] holding they are 'void' for lack of subject matter jurisdiction." To avoid this issue in the future, we will clarify the practical implications of our holding that standing is not jurisdictional in mortgage foreclosure cases.

{34}     "Jurisdiction of the subject matter and of the parties is the right to hear and determine the suit or proceeding in favor of or against the respective parties to it." *Sundance Mech. & Util. Corp.*, 1990-NMSC-031, ¶ 22 (internal quotation marks and citations omitted). Further, a party can raise subject matter jurisdiction at any time, even through a collateral attack alleging that a final judgment is void for lack of subject matter jurisdiction. *Chavez v. Cty. of Valencia*, 1974-NMSC-035, ¶ 15, 86 N.M. 205, 521 P.2d 1154; *see also* Rule 1-012(H)(3) ("*Whenever* it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added)). However, as we have previously discussed, a challenge to standing is in many ways analogous to a defense for failure to state a claim because it does not deprive the court of subject matter jurisdiction over the case, but instead bears on whether the plaintiff has stated a cognizable claim for relief. A failure to

31

state a claim may only be raised "during the pendency of the action," including on appeal, *Sundance Mech. & Util. Corp.*, 1990-NMSC-031, ¶ 25, but it cannot be the basis for a collateral attack on a final judgment. *See Palmer v. Palmer*, 2006-NMCA-112, ¶¶ 13-22, 140 N.M. 383, 142 P.3d 971 (considering whether a court which entered a settlement agreement between the parties had subject matter jurisdiction, but refusing to consider after the entry of the judgment whether one party had failed to state a claim). Therefore, a final judgment from a cause of action that may have lacked standing as a jurisdictional matter may be subject to a collateral attack, while a final judgment on any other cause of action, including an action to enforce a promissory note such as this case, is not voidable under Rule 1-060(B) due to a lack of prudential standing.

## III. CONCLUSION

{35}     For the foregoing reasons, we affirm the judgment of the Court of Appeals and remand this matter to the district court with instructions to vacate its judgment of foreclosure against Homeowner.

{36}     **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

32

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**JUDITH K. NAKAMURA, Justice**

33