This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PNC MORTGAGE, a division of PNC BANK, NATIONAL ASSOCIATION,**

Plaintiff-Appellee,

v.                                                                                  NO. 35,255

**HARBHAJAN KHALSA, a/k/a,
HARBHAJAN S. KHALSA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge**

Brownstein Hyatt Farber Schreck, LLP
Eric R. Burris
Thomas J. Bunting
Albuquerque, NM

for Appellee

Gleason Law Firm, LLC
Deirdre Gleason
Heath, MA

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     Defendant-Appellant Harbhajan Khalsa appeals from a foreclosure judgment in favor of Plaintiff-Appellee PNC Mortgage, a division of PNC Bank, National Association. Khalsa argues that PNC Mortgage failed to establish standing to enforce the underlying promissory note and to foreclose the mortgage that secured the note. For the reasons that follow, we agree. We therefore reverse.

**BACKGROUND**

{2}     In March 2006, Khalsa executed a promissory note (the Note) evidencing a debt in the principal sum of $304,500 to National City Mortgage (NCM), a division of National City Bank of Indiana (NCBI). The Note was secured by a mortgage on Khalsa's home (the Mortgage). Khalsa made the Mortgage payments until August 2010, but thereafter he went into default.

{3}     In December 2010, PNC Mortgage, "a division of PNC Bank, National Association successor by merger with National City Real Estate Services LLC, successor by merger to National City Mortgage, Inc. f/k/a National City Mortgage Co., a subsidiary of National City Bank," filed a mortgage foreclosure complaint against Khalsa. PNC Mortgage attached both an unindorsed copy of the Note and a copy of the Mortgage. The complaint alleged that the Mortgage had been assigned to PNC Mortgage and that PNC Mortgage was "the owner of the Mortgage and the

holder in due course of the Note." The complaint further alleged that PNC Mortgage was "the holder of the Mortgage . . . pursuant to a name change/merger with current holder of record." In February 2011, Khalsa filed an answer to the complaint, asserting the affirmative defense of lack of standing to sue.

{4} In March 2013, PNC Mortgage filed a motion for summary judgment, contending that it was "the current holder of the [N]ote" and also "successor by merger to the original entity to whom Mr. Khalsa gave the [N]ote," and as such, it was entitled to enforce the Note and the Mortgage. PNC Mortgage attached a copy of the Note that, unlike the version attached to the complaint, contained two undated indorsements: one by NCM, a division of NCBI, to National City Mortgage Co., a subsidiary of NCBI; and the other by National City Mortgage Co., a subsidiary of NCBI, in blank. In support of its motion, PNC Mortgage attached numerous documents, including the affidavit of Brian J. Arthur. As "an Assistant Vice President of Mortgage Services—Default for PNC Mortgage," Arthur stated that the Mortgage had been assigned to National City Mortgage Co. in 2006. A copy of that assignment was attached. Arthur further stated that National City Mortgage Co. had merged with and into National City Bank effective October 1, 2008, and that National City Bank had merged with and into PNC Mortgage effective November 6, 2009. A number of documents reflecting the National City Mortgage Co. merger into National City Bank

were attached. Arthur also stated that "National City Mortgage Co. [had] indorsed the Note in blank[,]" without specifying when that occurred. Finally, he stated that PNC Mortgage's counsel was in possession of the original Note.

{5}    In response to the motion for summary judgment, Khalsa asserted that material issues of fact existed, including whether PNC Mortgage was the holder of the Note. In an attached affidavit, Khalsa described his attempts to obtain a loan modification in 2010; in the course of those conversations, PNC Mortgage had advised Khalsa that the Bank of New York was the holder of the Note. In its reply, PNC Mortgage took the position that Khalsa's sworn statement concerning the conflicting information that he had received from PNC Mortgage should be regarded as "post-hoc efforts" to nullify prior discovery responses that failed to mention the exchange described in Khalsa's affidavit.

{6}    Khalsa subsequently filed his own motion for summary judgment and a motion to dismiss, contending that PNC Mortgage lacked support for its claim of standing and entitlement to collect amounts due on the Note and foreclose the Mortgage. Khalsa reiterated that PNC Mortgage told him that the Bank of New York was the holder of the Note and admitted in discovery that it did not own his loan, as it was part of a bundle given as security to another bank prior to the mergers. PNC Mortgage, Khalsa

argued, was unable to establish its status either as a holder in due course or as a holder by virtue of possession, corporate merger, or otherwise.

{7} The district court denied Khalsa's motion for summary judgment as untimely and did not rule on the remaining motions, instead proceeding to trial. The evidence presented at trial largely correlated with the materials submitted in connection with the pretrial motions. PNC Mortgage presented the original Note, bearing the two undated indorsements referenced in its motion for summary judgment. Arthur, PNC Mortgage's only witness, testified about the series of mergers by which PNC became the successor to NCM. In the course of that testimony, the district court admitted certifications reflecting the mergers of NCBI and NCM into PNC Bank, National Association, effective November 2009. Arthur also testified that it was the usual business practice of NCM to indorse original notes directly after closing and digital imaging. However, Arthur did not have any personal knowledge of the actual timing of the indorsements on the Note. Nor did he testify as to whether NCM, NCBI, and/or PNC Mortgage had possession of the Note at the time of the filing of the complaint or continuously retained possession of the Note between the time of origination and the time of trial.

**STANDARD OF REVIEW**

5

**{8}** We review the district court's determination that PNC Mortgage had standing to pursue the foreclosure complaint against Khalsa under the substantial evidence standard of review. *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 28, 369 P.3d 1046. Accordingly, we must determine whether PNC Mortgage presented evidence that a reasonable mind could accept as adequate to establish the requisites of standing, resolving all disputed facts and indulging all reasonable inferences in favor of the district court's findings. *Id.* "However, when the resolution of the issue depends upon the interpretation of documentary evidence, [the appellate court] is in as good a position as the trial court to interpret the evidence." *Id.* (alteration, internal quotation marks, and citation omitted).

**STANDING**

**{9}** The New Mexico Supreme Court has held that a party seeking to foreclose is "required to demonstrate under [the UCC] that it had standing to bring a foreclosure action at the time it filed suit." *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 17, 320 P.3d 1; *see Johnston*, 2016-NMSC-013, ¶¶ 20-23. To demonstrate standing, the foreclosing party "must demonstrate that it had the right to enforce the note and the right to foreclose the mortgage *at the time the foreclosure suit was filed.*" *PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 19, 377 P.3d 461 (emphasis added) (alteration, internal quotation marks, and citation omitted).

**{10}** A promissory note is a negotiable instrument that may be enforced by the holder. *See* NMSA 1978, § 55-3-301 (1992) (defining " '[p]erson entitled to enforce' [a negotiable] instrument" to include "the holder of the instrument," *inter alia*); *PNC Mortg.*, 2016-NMCA-064, ¶ 20. The holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" NMSA 1978, § 55-1-201(b)(21)(A) (2005).

**{11}** PNC Mortgage contends that there was sufficient evidence to establish its standing as the holder of the Note for two reasons. First, it argues that its possession of the Note, indorsed in blank, rendered it the holder. Alternatively, it relies on its status as successor by merger to the original lender. We address each argument in turn.

**The Indorsed Note**

**{12}** PNC Mortgage argues that the indorsed Note establishes its standing because PNC Mortgage was in possession of a bearer instrument, and thus it had the right to enforce the Note.

**{13}** The difficulty with PNC's argument is that the indorsed Note only came to light after PNC Mortgage filed its complaint. PNC Mortgage failed to establish either the date of the indorsements on the Note or PNC Mortgage's possession of the original Note at the time it filed its complaint. Under the circumstances, the Note, as produced

7

at trial, is insufficient to show that PNC Mortgage was the holder of the Note at the time it filed its foreclosure complaint. *See Johnston*, 2016-NMSC-013, ¶ 23 (holding that "a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint or producing a note dated before the filing of the complaint at some appropriate time in the litigation"); *PNC Mortg.*, 2016-NMCA-064, ¶ 25 (same).

{14}     PNC Mortgage argues that Arthur's testimony concerning the usual business practice of indorsing original notes promptly after closing supports a reasonable inference that the Note received similar treatment. Nevertheless, even assuming that this inference is permissible, the evidence remains insufficient. As previously described, Arthur did not testify to the crucial question of PNC Mortgage's possession of the Note at the time of the filing of the complaint. This is a fatal deficiency. *See Johnston*, 2016-NMSC-013, ¶ 28 ("Substantial evidence means relevant evidence that a reasonable mind could accept as adequate to support a conclusion." (internal quotation marks and citation omitted)).

**The Corporate Mergers**

{15}     Alternatively, PNC Mortgage argues that it established its standing to enforce the Note by demonstrating its status as successor to NCM. PNC Mortgage bases its

argument on the testimony and documentation describing the series of mergers, as well as a section in the National Bank Act, 12 U.S.C. § 215a(e) (2012), which provides:

> All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests[.]

PNC Mortgage therefore argues that it established its entitlement to enforce the Note because it had all of the rights of its predecessor in interest.

{16} In *PNC Mortgage*, we addressed a nearly identical argument. We concluded "that a successor in interest seeking to establish its right to foreclose [must] provide some evidence of a proper indorsement or transfer via negotiation as part of its prima facie case." 2016-NMCA-064, ¶ 28. Moreover, a successor in interest must establish that right as of the time of the filing of the complaint. *Id.* ¶ 34. In light of the decision rendered in *PNC Mortgage*, it is clear that proof of the mergers, without more, cannot establish PNC Mortgage's status as holder at the time of the filing of the complaint.

{17} Whether the Note was unindorsed, specially indorsed, or indorsed in blank at the time of the filing of the complaint, *possession* remained critical. *See* § 55-1-201(b)(21)(A) (defining the holder as "*the person in possession* of a negotiable

9

instrument that is payable either to bearer or to an identified person that is the person in possession[.]" (emphasis added)). Accordingly, "PNC Mortgage may have been able to establish a right to enforce the unindorsed note *had it shown documentation confirming what entity had possession of it through negotiation or transfer at the time of filing the complaint.*" *PNC Mortg.*, 2016-NMCA-064, ¶ 35 (emphasis added). It did not do so.

{18}     We understand PNC Mortgage to argue that Arthur's testimony and the documentary evidence concerning the mergers should be sufficient to establish its possession of the Note "[f]rom November 2009 forward[.]" However, neither Arthur's testimony nor the documents concerning the mergers actually addressed this subject. No specific information was supplied about the manner in which PNC Mortgage obtained possession. If PNC Mortgage and/or the various entities that merged into PNC Mortgage had continuous possession of the Note, as it suggests, PNC Mortgage should have presented evidence, such as business records, to that effect. In the absence of such evidence, the invited inference of continuous possession is unduly speculative. *See, e.g.*, *PNC Mortg.*, 2016-NMCA-064, ¶ 34 (observing that the "noticeable lack" of documentary evidence to confirm the inclusion of a promissory note in a series of mergers, combined with uncertainties surrounding possession in view of securitization, created genuine issues of material fact regarding possession).

10

**{19}** Finally, PNC Mortgage argues that the decision in *PNC Mortgage* should not be regarded as controlling because that case involved an award of summary judgment as opposed to a decision on the merits following a bench trial. We acknowledge the distinction. In either situation, however, the burden on the complainant remains fundamentally the same. *See generally Johnston*, 2016-NMSC-013, ¶ 27 (observing, on appeal from a decision rendered after a bench trial, that proof of the elements of standing is "an indispensable part of the plaintiff's case" (internal quotation marks and citation omitted)). As described above, the evidence upon which PNC Mortgage relied in this case exhibited the same deficiencies as the evidence relied upon in *PNC Mortgage*; the critical informational gaps cannot be filled with unsupported inference. *See, e.g.*, *Johnston*, 2016-NMSC-013, ¶¶ 28-32 (concluding that indirect evidence was insufficient to establish standing to foreclose under the applicable substantial evidence standard of review); *cf. Romero*, 2014-NMSC-007, ¶¶ 30-33 (holding that in the absence of admissible testimony or business records, alleged transfer of a promissory note to the complainant was not supported by the requisite substantial evidence).

**CONCLUSION**

**{20}** For the foregoing reasons, we conclude that PNC failed to prove its standing. We therefore reverse and remand with instructions to vacate the judgment of foreclosure. *See PNC Mortg.*, 2016-NMCA-064, ¶ 35.

11

{21}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JULIE J. VARGAS, Judge**

_____
**STEPHEN G. FRENCH, Judge**