IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2014-NMCA-044

Filing Date:  January 30, 2014

Docket No. 31,703

MONIQUE VILLALOBOS,

　　　Plaintiff-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS
OF DOÑA ANA COUNTY, NEW MEXICO,
DOÑA ANA COUNTY DETENTION CENTER,
CHRISTOPHER BARELA, individually and as
Administrator of the Doña Ana County Detention
Center, AMANDA BUGL, individually, ADALY
MORENO, individually, and MELISSA SAENZ,
individually,

　　　Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
James T. Martin, District Judge

Camunez Law Firm, P.C.
Rosanne Camunez
Las Cruces, NM

for Appellant

Beall & Biehler
Mary T. Torres
Gianna M. Mendoza
Albuquerque, NM

for Appellees

OPINION

KENNEDY, Chief Judge.

1

**{1}** In this case, we hold that expert testimony is needed to establish the standard of care for monitoring inmates in prisons. Monique Villalobos (Plaintiff), an inmate at the Doña Ana County Detention Center (Detention Center), sued the Board of County Commissioners of Doña Ana County, the Detention Center, and Christopher Barela (collectively, County Defendants) for negligence after she was assaulted and raped by three inmates: Amanda Bugl, Adaly Moreno, and Melissa Saenz (collectively, Inmate Defendants). The district court granted summary judgment in favor of County Defendants, finding that Plaintiff was required and failed, to provide expert testimony regarding industry standards for operating a Detention Center and monitoring inmates. We conclude that this is a case that involves issues a normal juror would not necessarily know and requires expert testimony. We also conclude there was no abuse of discretion in discovery rulings the district court made, and we affirm.

## I.      BACKGROUND

**{2}** The undisputed facts are as follows. Plaintiff was an inmate at the Detention Center in January 2007. While she was detained there, she was housed in a large open pod with other females. On January 12, 2007, Plaintiff was playing cards with another detainee when Inmate Defendants summoned her into a cell. When Plaintiff met Inmate Defendants in the cell, they assaulted and raped her. Plaintiff did not report the incident at that time and went back to playing cards. Approximately ten minutes later, Inmate Defendants called Plaintiff into the same cell and assaulted and raped her again. Plaintiff contacted a detention officer and reported the incident. After a criminal investigation, Inmate Defendants were charged with and convicted of, criminal sexual penetration and conspiracy to commit criminal sexual penetration.

**{3}** Plaintiff sued County Defendants for negligence, alleging that they failed to protect her from the assault and that their policies have resulted in unacceptable inmate violence of which she became a victim. She also included claims for battery, sexual assault, a municipal policy of ignoring and fostering inmate violence, and violation of her Fourth, Fifth, and Fourteenth Amendment rights.

**{4}** Eventually, County Defendants moved for summary judgment based on qualified immunity, as well as Plaintiff's lack of expert testimony, demonstrating the standard of care required of County Defendants and any breach of that standard. The district court agreed and found that "[a]ll of Plaintiff's claims fail because she can provide no expert testimony which demonstrates the standard of care in the detention center industry regarding the supervision of inmates and detainees, that [County] Defendants breached the relevant standard of care or [County] Defendants' alleged breach caused . . . Plaintiff's injuries." Plaintiff appealed, arguing that the district court erred in its expert testimony requirement as well as two discovery issues. The issue of qualified immunity was not appealed.

## II.      DISCUSSION

## A. Expert Testimony Was Required to Establish the Standard of Care

**{5}** Plaintiff argues that the district court erred in its conclusion that she needed expert testimony to establish an issue of fact regarding the standard of care of the Detention Center's staffing, supervision of inmates, and the Detention Center's operation at summary judgment. Summary judgment is proper where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists. *See Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**{6}** In this case, Plaintiff alleges that the Detention Center breached its duty to "provide adequate means and staff to monitor inmate behavior[] and to adequately train and supervise staff." In its motion for summary judgment, County Defendants provided evidence through expert testimony that the Detention Center met or exceeded accepted standards in the adult detention corrections field, including with regard to staffing and monitoring of detainees/inmates, classification of inmates, and with respect to its policies, procedures, and post orders. Further, the only expert testimony on the issue of negligence established that County Defendants did not fall below the standard of care in the industry with regard to the management and construction of the Detention Center. In her response, Plaintiff did not offer any competent evidence to rebut County Defendants' expert testimony and thus failed to create a genuine issue of fact. Instead, Plaintiff argued below, as she does on appeal, that she neither needed an expert to establish any standard of care County Defendants owed her nor any duty breached and that the district court erred in ruling that she needed an expert to help establish these facts. We lack case law on this topic. Both Plaintiff and County Defendants relied on out-of-jurisdiction cases. For the reasons that follow, we are persuaded that this case most resembles cases where courts ruled that expert testimony was necessary, and we are persuaded by their reasoning. *See Hughes v. District of Columbia*, 425 A.2d 1299, 1303 (D.C. 1981). Although a case in which an expert is not necessary to establish negligence in a prison context may exist, it is not this case.

**{7}** Rule 11-702 NMRA provides that, "if scientific, technical[,] or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert may testify thereto in the form of an opinion." *Mott v. Sun Country Garden Prods., Inc.*, 1995-NMCA-066, ¶ 34, 120 N.M. 261, 901 P.2d 192 (alteration, internal quotation marks, and citation omitted). If a fact in issue is understandable by an average lay juror, "expert opinion testimony is not necessary." *Id.*

**{8}** In *Hughes*, the court determined that "[t]he question of whether prison officials acted

3

reasonably to secure the safety of an inmate is not one within the realm of the everyday experiences of a lay person." 425 A.2d at 1303. *Hughes* concerned an inmate who brought a negligence suit after being assaulted in prison, claiming that failure to return him to protective custody after he had complained of an incident at work and requested a work change was negligent. *Id.* at 1300. After the evidence was presented to a jury, the court directed a verdict for the correctional institution on the basis that the plaintiff had failed to establish the acceptable standard of care by expert testimony. *Id.* at 1303. The court held that, because "[t]he reasonably prudent juror cannot be expected to appreciate the ramifications of prison security as well as the parallel considerations involving the safekeeping of prisoners, and therefore, whether, under given circumstances, reasonable care was exercised[,]" expert testimony or other evidence was needed to establish the standard. *Id.* The *Hughes* court also made it clear that a plaintiff must demonstrate negligence by more than the mere existence of the event. *Id.*

{9} Other courts have adopted the *Hughes* reasoning. The Tennessee Court of Appeals held that the manner of an inmate's death did not alone establish that the facility was negligent. It stated that "[e]xcept in the most obvious cases, whether the prison officials acted reasonably to protect a prisoner's safety requires expert proof or other supporting evidence." *Cockrum v. State*, 843 S.W.2d 433, 438 (Tenn. Ct. App. 1992). Other Tennessee cases reiterate this premise and have ruled that, "[i]f the conduct of prison staff is not clearly improper, expert proof delineating the precise scope of the staff's duty and evaluating the adequacy of the staff's conduct is essential[,] the claimant cannot recover without it." *Atkinson v. State*, 337 S.W.3d 199, 205 (Tenn. Ct. App. 2010).

{10} Courts that have not required expert testimony for prison-related negligence have done so when less technical issues are at hand. In *Morgan v. District of Columbia*, the question was severe overcrowding of the jails as related to a specific instance of inmate violence. 824 F.2d 1049, 1062 (D.C. Cir. 1987). The *Morgan* court held that "[t]he mere fact that prison security is normally left to the discretion of prison administrators does not, *a fortiori*, prevent the trial court from determining that a reasonable jury could conclude upon egregious facts that the administrators abused their discretion." *Id.* In a related New Mexico case, we have held that a court could find a jail breached its duty to inmates when an inmate was "severely, cruelly, inhumanly, and brutally battered for three nights without intervention by any jail personnel[,]" and the noise of the beating "was so loud that it . . . could be heard throughout the jail." *Methola v. Cnty. of Eddy*, 1981-NMCA-048, ¶ 15, 96 N.M. 274, 629 P.2d 350 (internal quotation marks omitted).

{11} The cases that Plaintiff relies on are further examples of the obvious cases where expert evidence is not necessary because the facts at issue are understandable by an average lay juror. In *Adorno v. Correction Services Corp.*, 312 F. Supp. 2d 505 (S.D.N.Y. 2004), the New York district court held that lay jurors did not need expert testimony to determine whether a halfway house had notice that it was continuing to employ a person who was sexually abusing female residents. *Id.* at 515. Similarly, in a Texas case where an inmate died after a brutal beating that was observed by guards, the court held that the decedent's

family was not required to put on expert testimony regarding the standard of care in prisons. *Wackenhut Corr. Corp. v. de la Rosa*, 305 S.W.3d 594, 623-24 (Tex. Ct. App. 2009) ("The only issue at trial was . . . how far [the prison] had to go to detect the possession of weapons by inmates. Specialized knowledge was not required to show that a search should be performed on some or all inmates at a given time. The jury was presented with simple explanations of [the prison's] reason for not searching every inmate at the crash gate, including preventing inmate congestion that could lead to assaults. The jury was fully able to understand these arguments.").

{12}     Here, Plaintiff asserts that the area in which she was assaulted was an architectural blind spot in the facility that could not be covered by video surveillance, as well as not being directly monitored by guards. Plaintiff argues that jurors can use common knowledge to find it negligent to allow inmates in an area that is not properly subject to surveillance or monitored, either due to the existence of a blind spot or lack of guards. We disagree and conclude that such a contention requires expert testimony. Plaintiff did not provide any such testimony as to the standard of care for the monitoring of inmates, jail design, video surveillance, or any other factors that underlie such a standard. *Wilkins v. District of Columbia*, 879 F. Supp. 2d 35, 38, 41-42 (D.D.C. 2012) ("According to [the] plaintiff's expert witness, this failure to monitor inmate movements violated national standards for the operation of jails. . . . The question of whether prison officials acted reasonably to secure the safety of an inmate is not one within the realm of the everyday experiences of a lay person, so [the plaintiff] was required to present expert testimony to establish the standard of care." (internal quotation marks and citations omitted)); *Estate of Belden v. Brown Cnty.*, 261 P.3d 943, 969 (Kan. Ct. App. 2011) ("There is nothing so obviously wrong with or deficient in the Brown County jail policies and practices that we could suggest a jury reasonably might find them to be negligent simply by reading them and considering their application to these circumstances, even with a generous dollop of common sense."); *Phillips v. District of Columbia*, 714 A.2d 768, 773 (D.C. 1998) (stating that, in an inmate suicide case, "the plaintiff was required to establish the applicable standard of care, as well as a breach thereof, by expert testimony"). We hold that, in order for a jury to make a decision regarding the standard of care of the monitoring by prison officials in this instance, expert testimony is required. Contrary to Plaintiff's argument, the mere fact that she was assaulted does not prove that the prison monitoring fell below the required standard of care.

## B.     Discovery Issues

{13}     During the discovery phase of the case, Plaintiff requested certain information dealing with the male side of the Detention Center and the mental health records of Inmate Defendants. A protective order was drafted by County Defendants in order to ensure the privacy of some of the protected information Plaintiff had requested. Counsel for Plaintiff did not sign the protective order for several months, delaying the production of the protected documents. At a hearing, the district court determined that the information Plaintiff sought about the male side of the Detention Center was not sufficiently related to her case to permit discovery and decided that she needed permission from Inmate Defendants before County

Defendants could release their mental health records. The district court denied her request to extend discovery based on the late production caused by her own delay in signing the protective order.

**{14}** Plaintiff also argues that the district court erred in denying her certain matters in discovery. Specifically, she requested and was denied discovery regarding the male side of the Detention Center and Inmate Defendant Moreno's mental health records. We review a district court's discovery orders for an abuse of discretion. *See Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 6, 139 N.M. 671, 137 P.3d 611. Our basic discovery rule, Rule 1-026(B)(1) NMRA, states that "[p]arties may obtain discovery of any information, not privileged, which is relevant to the subject matter involved in the pending action. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

### 1. Male Side of Detention Center

**{15}** In her briefs to this Court, Plaintiff relies on Rule 1-026(B)(1)'s broad presumption in favor of discovery and argues that the male side of the Detention Center was relevant to her case due to potentially similar blind spots and monitoring and the Detention Center's alleged notice of danger and failure to take corrective action after a male inmate was killed in the showers in an alleged blind spot. County Defendants argue that, because the male inmate's death was gang-related and occurred in the showers, it had nothing to do with the attack on Plaintiff. We do not consider Plaintiff's request for records of all male-on-male violence because she does not address that topic on appeal.

**{16}** "The pretrial discovery rules, including Rule [1-026], intend a liberal pretrial discovery, to enable the parties to obtain the fullest possible knowledge of the facts before trial. Notwithstanding objection to the depositions, the presumption is in favor of discovery." *Marchiondo v. Brown*, 1982-NMSC-076, ¶ 13, 98 N.M. 394, 649 P.2d 462. However, "[a]lthough the rules favor allowance of liberal pretrial discovery, the trial court is vested with discretion in determining whether to limit discovery." *DeTevis v. Aragon*, 1986-NMCA-105, ¶ 10, 104 N.M. 793, 727 P.2d 558 (citation omitted). Apart from broad language calling for liberal discovery, Plaintiff fails to cite any authority to support her claim that the male side of the Detention Center was vital to her case, and the denial of discovery regarding it was in error. She instead states that information about an attack in a blind spot on the male side of the Detention Center would be relevant to whether County Defendants were on notice that their monitoring system put inmates at risk for being attacked in a blind spot. However, Plaintiff points us to no authority or expert opinion suggesting a duty to eliminate or monitor all blind spots. Because Plaintiff fails to cite any authority to support her claim that the district court abused its discretion in denying her discovery about the male side of the Detention Center, we defer to the district court's judgment and conclude that the district court did not abuse its discretion.

### 2. Mental Health Records of Inmate Defendant Moreno

**{17}** Plaintiff also contends that she was entitled to discovery regarding the mental health records of one of her attackers, Inmate Defendant Moreno, as it would be important in determining whether Inmate Defendant Moreno was properly classified and housed with Plaintiff. She further alleges that it was error for County Defendants to refuse to produce the mental health files of Inmate Defendants, particularly since they had already filed an unopposed protective order.

**{18}** The district court denied discovery of the mental health records as protected by state and federal law and outside the scope of the protective order, as well as unlikely to lead to discoverable evidence. Without a release from Inmate Defendants, the district court would not order production of the mental health records. The only protective order in this case was requested by County Defendants in April 2010. The order was not signed by Plaintiff's counsel for several months and was eventually filed on October 13, 2010. The deadline for discovery was November 11, 2010, but Plaintiff's counsel requested an extension because her late signing of the protective order meant that she had only begun to receive much of her requested discovery.

**{19}** Generally, mental health records are privileged under New Mexico law. Rule 11-504(B) NMRA ("A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental[,] or emotional condition . . . among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist[.]"). Plaintiff does not argue that any exception to this privilege applies for Inmate Defendant Moreno's mental health records. Plaintiff was permitted other information regarding classification of Inmate Defendant Moreno and the other Inmate Defendants, which was separate from the mental health records. Plaintiff does not clarify the difference between these records, and why she needed the ones she was denied. To the extent that she argues the protective order adequately protects the confidentiality of the records, we agree with the district court that County Defendants cannot release Inmate Defendant Moreno's mental health records without her consent, and her ambiguous request did not make it clear if she was attempting to obtain unprivileged records. NMSA 1978, § 43-1-19(A) (2009) ("Except as otherwise provided[,] . . . no person shall, *without the authorization of the client*, disclose or transmit any confidential information from which a person well acquainted with the client might recognize the client as the described person[.]" (emphasis added)). Plaintiff's delay in pursuing that authorization from Inmate Defendant Moreno deprived her of the opportunity to obtain an expert regarding Inmate Defendant Moreno's mental health. The district court did not abuse its discretion in denying discovery of Inmate Defendant Moreno's mental health records.

## III. CONCLUSION

**{20}** Because expert testimony was required in order to establish the prison industry standards in monitoring inmates, and Plaintiff provided none, we affirm the district court's

7

award of summary judgment.  We also hold that there was no abuse of discretion in the district court's discovery rulings regarding the male side of the Detention Center and Inmate Defendant Moreno's mental health records.

**{21}    IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for** *Villalobos v. Doña Ana Bd. of Cnty. Comm'rs*, **No. 31,703**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Expert Witnesses
Summary Judgment

**CIVIL RIGHTS**
Prison Conditions

**EVIDENCE**
Expert Witness

**JUDGES**
Abuse of Discretion

**NEGLIGENCE**
Negligence, General
Standard of Care