This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**FRANK THOMAS**,

Plaintiff-Appellant,

v.                                                    **NO. 34,896**

**CHRISTOPHER FULLER, M.D. and
HIGH COUNTRY MACULA, RETINA,
AND VITREOUS, P.C., a New Mexico
Professional Corporation**,

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Ken Wagner Law, P.A.
Kenneth R. Wagner
Thomas J. McBride
Albuquerque, NM

for Appellant

Hicks & Llamas, P.C.
Larry W. Hicks
Kimberly Norvell
El Paso, TX

for Appellee Fuller

Butt Thornton & Baehr PC
W. Ann Maggiore
Albuquerque, NM

for Appellee High Country Macula, Retina and Vitreous, P.C.

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

{1}     Plaintiff Frank Thomas appeals following the district court's entry of summary judgment in favor of Defendants Christopher Fuller, M.D. (Dr. Fuller) and High Country Macula, Retina and Vitreous, P.C. (collectively, Defendants). [DS 2; RP Vol. II, 464] This Court issued a notice proposing to reverse on the ground the district court erred in granting summary judgment in favor of Defendants. [CN 2] Specifically, we proposed to hold that based on the opinion letter and deposition testimony of Dr. Geiger, Plaintiff's expert witness, a genuine issue of material fact exists as to which conduct by Dr. Fuller occurred and whether it was negligent. [CN 2, 6] Defendants filed a memorandum in opposition, which we have duly considered. Plaintiff also filed a memorandum in support partially opposing this Court's proposed disposition and requesting we address the remaining issues raised in Plaintiff's docketing statement. Remaining unpersuaded, we reverse on the ground the district court erred in granting summary judgment.

{2}     As we stated in our notice of proposed disposition, "[s]ummary judgment is appropriate where there are no genuine issues of material fact and the movant is

2

entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). [CN 3] "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. [CN 3] "[T]he party opposing summary judgment has the burden to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 10, 146 N.M. 179, 207 P.3d 1156 (internal quotation marks and citation omitted).[CN 3]

**{3}** In our notice proposing to reverse, this Court noted Dr. Geiger's opinion letter states Dr. Fuller's needle impaled the optic nerve and went through the interior of the eye, resulting in rapid degeneration of the neurologic structure; Dr. Fuller's conduct "falls below the applicable standards of medical care"; and all of Dr. Geiger's opinions are "to a reasonable medical probability." [*See* RP Vol. I, 168; CN 5] We further note Dr. Geiger's deposition testimony points out two possible causes of the blindness resulting from occlusion of blood supply to the macula: injection of anesthetic either (1) into the interior of the eye or (2) into the optic nerve sheath. [*See* RP Vol. I, 159, 176-77, 179] Dr. Geiger testified at her deposition that, to a reasonable degree of medical probability, Dr. Fuller penetrated Plaintiff's eye with the needle.

3

[RP Vol. I, 179] Dr. Geiger based this opinion on three observations: (1) the existence of "not an insignificant amount" of hemorrhage inside the eye, (2) subretinal hemorrhage, and (3) the appearance of a scar on the retina that has no other explanation for being there. [RP Vol. I, 179] Dr. Geiger also testified she was unable to opine to a reasonable medical probability that Dr. Fuller, in fact, injected anesthetic into the nerve sheath and that, even if he had, such injection could occur despite the use of proper technique. [RP Vol. II, 177, 181-82] Dr. Geiger explained she was uncertain as to whether Dr. Fuller injected into the nerve sheath, because too much time had elapsed before Plaintiff's eye was imaged, and confirmation of such an injury requires immediate imaging. [RP Vol. I, 177, 181-82] Dr. Geiger testified either injection into the globe or the nerve sheath could have caused the vascular occlusion resulting in Plaintiff's blindness, but the facts suggested injection into the globe was the cause. [RP Vol. I, 177, 179, 181] Dr. Geiger testified injection into the eye is a risk of the procedure and can occur even with the use of proper technique and in accordance with the standard of care. [*See* RP Vol. I, 175-76, 182] Dr. Geiger went on to testify she could not say Dr. Fuller's injection into the eye was a breach of the standard of care, but "[m]anagement from that point forward though fell below standard of care." [RP Vol. I, 182] Dr. Geiger testified, while nothing could have been done to stop the damage after Dr. Fuller's injection into the eye or nerve sheath, the community standard was to stop the surgery after Dr. Fuller noted the bleeding inside

Plaintiff's eye. [RP Vol. I, 180, 182, 183] Dr. Geiger went on to testify, while continuing surgery without investigating the bleeding did not directly cause further harm, Dr. Fuller's decision to continue surgery indirectly caused harm. [RP Vol. I, 183] Dr. Geiger explained immediate imaging to determine the cause of the bleeding would have incidentally revealed Plaintiff's pituitary tumor, which resulted in some permanent visual deficit in his other eye and which, because of the lack of imaging, was not diagnosed until some time later. [RP Vol. I, 183]

{4} Dr. Geiger's opinion letter and deposition testimony are inconsistent as to which conduct was in breach of the standard of care and whether the breach was the cause of Plaintiff's blindness; we conclude such an inconsistency does not warrant the granting of summary judgment. *See Griego v. Grieco*, 1977-NMCA-018, ¶ 39, 90 N.M. 174, 561 P.2d 36 ("[W]here a conflict arises in statements made by a witness in an affidavit and deposition on a material fact, summary judgment is improper."); *Villalobos v. Bd. of Cty. Comm'rs*, 2014-NMCA-044, ¶ 5, 322 P.3d 439 ("Summary judgment is proper where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists."). Defendants argue Dr. Geiger's opinion letter and deposition testimony are not inconsistent, because the opinion letter makes only general statements about breach of the standard of care, and the breach she identified in her deposition testimony was not the cause of the damage. [MIO 2] Defendants also argue Dr. Geiger's opinion letter does not create a genuine issue of material fact,

because, Defendants assert, the letter contains only conclusory statements that are not based on specific facts. [MIO 8] We disagree. While Dr. Geiger's deposition testimony does not state the manner in which Dr. Fuller performed the anesthetic injection was in breach of the standard of care and instead points to Dr. Fuller's continuation of the surgery as a breach, Dr. Geiger's opinion letter describes three possible causes of Plaintiff's blindness resulting from the anesthetic injection and that such conduct was a breach of the standard of care. [RP Vol. I, 182, 168] We also note the opinion letter is based on specific facts, including Dr. Geiger's clinical findings, angiogram imaging, and Plaintiff's medical record, not generalized conclusions as Defendants suggest. As we noted in our proposed disposition, "[w]e are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted)). Thus, we conclude the opinion letter and deposition testimony creates a genuine issue of material fact, and summary judgment was improper.

{5} Plaintiff urges this Court to also reverse on the ground the district court erred in striking Dr. Geiger's errata sheet, supplemental errata sheet, and affidavit for failure to comply with Rule 1-030 NMRA and because they were "sham affidavits." [MIS 7-21] Plaintiff requests in the alternative that this Court place those issues on the general

6

calendar for consideration separate from the reversal of summary judgment. [Id.] We note the reversal of summary judgment in favor of trial on the merits provides Plaintiff with the opportunity to present further evidence in support of his claim, including testimony by Dr. Geiger explaining and clarifying the inconsistency between her opinion letter and deposition testimony. Because Plaintiff is free to present further evidence and explanatory testimony by Dr. Geiger at trial, her errata sheet, supplemental errata sheet, and affidavit are redundant. Thus, we need not review whether the district court improperly declined to consider them in granting summary judgment and decline to place those issues on the general calendar.

{6} For the reasons stated above and in this Court's notice of proposed disposition, we reverse summary judgment in favor of Defendants.

{7} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**J. MILES HANISEE, Judge**