This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**U.S. BANK, NATIONAL ASSOCIATION,**

Plaintiff/Counterdefendant-Appellee,

v.                                     **No. 35,165**

**PERRY A. KESLER,**

Defendant/Counterclaimant-Appellant,

and

**TAXATION AND REVENUE DEPARTMENT**
**OF THE STATE OF NEW MEXICO; and**
**UNITED STATES OF AMERICA (IRS),**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

McCarthy & Holthus, LLP
Karen Weaver
Joshua T. Chappell
Albuquerque, NM

for Appellee

Perry A. Kesler
Rowe, NM

Pro Se Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Defendant Perry Kesler appeals the district court's grant of summary judgment to Plaintiff U.S. Bank (the Bank), and the dismissal of his counterclaims with prejudice. We affirm in part and reverse in part.

**I.    BACKGROUND**

**{2}** In February 2008 Defendant Perry Kesler borrowed $150,000 from First Community Bank to refinance the construction financing he took to build his home in Rowe, New Mexico. As security for the loan, Defendant gave First Community Bank a mortgage on the home. First Community Bank subsequently failed, and the FDIC, as its receiver, sold several of First Community Bank's assets to the Bank.

**{3}** At the end of February 2012, Defendant was four months delinquent on his mortgage and mailed a single payment to the Bank (February payment). Defendant spoke with the Bank's representative on the phone and advised that he had mailed the payment. The Bank's representative told Defendant that the payment was insufficient and that it would be returned to him. When it received Defendant's payment in March 2012, the Bank immediately returned the check, noting that it was for an amount "less than the amount needed for the total payment due[.] The amount due as of the date of

this letter is $3,889.24." Two weeks after returning Defendant's partial payment, the Bank sent notice to Defendant that foreclosure proceedings had begun.

{4}    In support of its complaint for foreclosure, the Bank attached a copy of the promissory note signed by Defendant bearing a special indorsement to the Bank from Nancy K. Jordan, Senior Vice President of First Community Bank, as well as an allonge to note, paying the note referenced in the allonge to the order of the Bank. The allonge listed the amount of the note at $300,000, rather than the $150,000 set out in the note, and was signed by Kim Kintop, Assistant Vice President of U.S. Bank, as attorney-in-fact for the FDIC, receiver for First Community Bank. The Bank also attached to the complaint a copy of the recorded mortgage to First Community Bank, as well as a copy of the recorded assignment of mortgage to the Bank.

{5}    In response to the Bank's foreclosure complaint, Defendant filed an answer and counterclaim. Quoting NMSA 1978, Section 58-21A-4(K)(5) (2009), of the Home Loan Protection Act (HLPA) requiring creditors to post payments on the day they are received, but erroneously referring to it as the Mortgage Loan Company Act (MLCA), Defendant alleged in his counterclaim that the Bank wrongfully rejected and returned the February payment. Defendant attached his February 29, 2012 letter questioning the Bank's policy of rejecting loan payments and the Bank's letter returning his check. Ten months later, Defendant reiterated his claim that the Bank wrongfully rejected the

3

payment in his discovery responses to the Bank, quoting the same language from the HLPA, but again erroneously referring to the MLCA. Defendant also raised claims for slander of title, fraud, interference with contractual relations, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and the Fair Debt Collections Act.

{6} Two years after filing its complaint, the Bank filed a motion for summary judgment on its claims and on Defendant's counterclaims, offering the affidavit of Melanie R. Manalansan in support of the motion. Ms. Manalansan stated that her affidavit is "based on [her] personal knowledge, [her] experience as a[n] officer [of U.S. Bank], and [her] knowledge and review of U.S. Bank's record-keeping systems and its business records created and kept in the regular course of U.S. Bank's business."

{7} Defendant responded to the Bank's motion for summary judgment by arguing that the Bank failed to demonstrate that it had standing to sue, failed to demonstrate that Ms. Manalansan had personal knowledge to testify about the matters set out in her affidavit, and engaged in a history of questionable practices nationwide that resulted in action by the United States Department of the Treasury. Finally, Defendant again asserted that the Bank wrongfully refused his payment, referencing the letters and returned payment attached to his answer and counterclaim, but this time correctly

4

attributed the quoted language to the HLPA and argued that the Bank's actions violated the HLPA. Other than his reference to the letters and returned payment and the attachment of the consent order executed between the Bank and the Department of the Treasury and its subsequent amendments to his response to the motion for summary judgment, Defendant provided no other evidence to rebut the Bank's evidence offered in support of its motion for summary judgment. Instead, Defendant argued that he required additional discovery to respond to the Bank's claims and prove his counterclaims, but he failed to identify specifically what that discovery might be or provide an affidavit setting out the reasons he was prevented from obtaining evidence necessary to justify his position.

{8}     A few weeks after responding to the Bank's summary judgment motion, Defendant filed a motion to amend his answer and counterclaim to correct his erroneous reference to the MLCA. At the hearing on the Bank's motion for summary judgment, Defendant again argued that the Bank wrongfully refused to take his payment, that the HLPA protected him from that type of activity, and that the Bank's violation was the basis for his counterclaim. At the close of the hearing, the district court granted the Bank's motion for summary judgment on its claims and Defendant's counterclaims. Defendant appealed.

## II.   ISSUES ON APPEAL

{9}   Defendant asserts twelve different points of error purportedly committed by the district court in granting the Bank's motion for summary judgment. We have distilled them to five, including: (1) whether the Bank had standing to bring its foreclosure action; (2) whether the affidavit submitted in support of the Bank's motion was prepared based on the affiant's personal knowledge; (3) whether the district court erred when it granted summary judgment before ruling on discovery motions and before discovery was complete; (4) whether Defendant properly raised claims under the HLPA and Unfair Practices Act (UPA) such that a genuine issue of material fact existed on Defendant's claims; and (5) whether the district court erred by granting summary judgment to the Bank when it failed to rule on the motion for more than sixty days, contrary to Rule 1-054.1 NMRA. We take each of these issues in turn and affirm the district court on all grounds with the exception of its grant of summary judgment on Defendant's HLPA and UPA claims. We reverse the district court's grant of summary judgment on these two claims, alone, and remand the matter for further proceedings.

## III.   STANDARD OF REVIEW

{10}   "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y.*

6

*Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Lopes*, 2014-NMCA-097, ¶ 6 (internal quotation marks and citation omitted). "A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citation omitted).

## IV. DISCUSSION

### A. Summary Judgment on The Bank's Claims

#### 1. Standing

{11}     Our Supreme Court has held that to foreclose a mortgage, a party must "demonstrate under New Mexico's Uniform Commercial Code (UCC) that it had

standing to bring a foreclosure action at the time it filed suit." *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 17, 320 P.3d 1; *see Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶¶ 20-23, 369 P.3d 1046. To establish standing, the foreclosing party "must demonstrate that it had the right to enforce the note and the right to foreclose the mortgage *at the time the foreclosure suit was filed.*" *PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 19, 377 P.3d 461 (emphasis added) (alteration, internal quotation marks, and citation omitted). "[A] mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint or producing a note dated before the filing of the complaint at some appropriate time in the litigation." *Johnston*, 2016-NMSC-013, ¶ 23; *see PNC Mortg.*, 2016-NMCA-064, ¶ 25. A promissory note may be enforced by the holder. *PNC Mortg.*, 2016-NMCA-064, ¶ 20; *see* NMSA 1978, § 55-3-301 (1992) (defining " '[p]erson entitled to enforce' [a negotiable] instrument" to include "the holder of the instrument," *inter alia*). The holder is the person in possession of a note that is payable either to bearer or to an identified person in possession. *See* NMSA 1978, § 55-1-201(b)(21)(A) (2005). An indorsement made payable by the holder that identifies a person to whom it makes the instrument

payable is "specially indorsed." NMSA 1978, § 55-3-205(a) (1992). "When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." *Id.*

{12}    In this case, the Bank attached to its complaint a copy of a specially indorsed promissory note naming the Bank, as well as an allonge paying the note to the order of the Bank. The Bank also attached a copy of the recorded assignment of mortgage to the Bank. By attaching all three documents to its complaint, the Bank properly demonstrated that it was the holder of the note and the assignee of the mortgage at the time its complaint was filed. *See Johnston*, 2016-NMSC-013, ¶ 23; *PNC Mortg.*, 2016-NMCA-064, ¶ 25.

{13}    In response to the Bank's evidence submitted in support of summary judgment, Defendant questions the validity of the special indorsements on the note and the allonge, arguing that the indorsements are not dated, that the loan amount of the note is different from the amount listed on the allonge, and that the Bank failed to properly establish the authority of the individuals who indorsed the note. Defendant's arguments, however, are without merit.

{14}    First, we are not persuaded by Defendant's argument that the conflicting amounts set out in the note and the allonge created a genuine issue of material fact requiring a trial on the Bank's claims. While the allonge referenced an original

9

obligation of $300,000, rather than the $150,000 contained in the note, the Bank explained that the allonge erroneously referenced the maximum amount secured by the mortgage, rather than the amount of the loan. Notwithstanding this error, the allonge correctly referenced a note dated February 15, 2008, listed Defendant as the borrower, listed the address of the property, and then indorsed that note to the Bank. Defendant has provided no evidence to create a genuine issue of material fact that the note referenced in the allonge was different from the February 15, 2008 note he executed to First Community Bank.

{15} Next, by attaching a copy of the note and the allonge to its complaint, both already affixed with special indorsements, the Bank established that the note had been indorsed before the action was commenced. *See Johnston*, 2016-NMSC-013, ¶ 23 (noting that attaching a note containing an undated indorsement to the initial complaint is sufficient to demonstrate possession of the instrument); *PNC Mortg.*, 2016-NMCA-064, ¶ 25 (same). Once the Bank produced the specially indorsed note and allonge and established that they were indorsed prior to the filing of the Bank's complaint, regardless of whether the actual date of the indorsement was set out on the documents, the burden shifted to Defendant to show that a genuine issue of material fact existed for trial as to the authority of the individuals who executed the note and allonge. *See Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (The movant need only make

a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)). To show the existence of a genuine issue of material fact, "[a] party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 29, 294 P.3d 1276 (internal quotation marks and citation omitted). "A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne*, 2013-NMSC-004, ¶ 15 (alteration, internal quotation marks, and citations omitted).

{16}    Defendant failed to provide any evidence to rebut the Bank's showing that it had the right to enforce the note at the time it filed its complaint. While he questioned the authority of those who had executed the indorsement and the allonge, he provided no evidence that they were not authorized to execute those documents. Defendant further argues that he is entitled to perform additional discovery regarding the authority of the signatories; however, he fails to explain why, after the matter had been pending for two and a half years, he had not performed that discovery. Defendant repeatedly blames the Bank for his lack of discovery necessary to prove his

case, but Defendant's discovery requests do not seek any specific information from the Bank about the individuals who executed the indorsement and the allonge; and he points to no other specific information he requested but did not receive that is relevant to the authority of those who executed the indorsement and allonge.

**2.      Affidavit Lacking Personal Knowledge**

{17}      Defendant next contends that the district court erred when it entered summary judgment on the Bank's claims based on the affidavit of Ms. Manalansan, claiming that Ms. Manalansan did not have personal knowledge of the facts set out in her affidavit. Defendant argues that Ms. Manalansan's reference to a deed of trust in her affidavit evidences her lack of knowledge of his loan documents and renders her incompetent to testify in support of the Bank's claims. In her affidavit, Ms. Manalansan makes reference, both generally and specifically, to "promissory note[s] and mortgage[s]/deed[s] of trust" she manages and reviews. However, Ms. Manalansan's identification of Defendant's loan documents in her affidavit specifically points to the "promissory note and mortgage" and the "assignment of mortgage" offered in support of the Bank's claims, making no reference to a deed of trust. While Defendant correctly argues that our summary judgment rule requires that affidavits be made on personal knowledge, his argument is misplaced. *See* Rule 1-056(E) NMRA ("Supporting and opposing affidavits shall be made on personal

12

knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). In this instance, the Bank produced a properly specially indorsed note and a proper assignment of mortgage showing the Bank's interest in both instruments. Ms. Manalansan's identification of those business records, offered in support of the Bank's motion, along with her testimony about her familiarity with the Bank's loan servicing and document maintenance systems establish sufficient personal knowledge of the relevant mortgage documents to satisfy the requirements of Rule 1-056(E).

### 3. Discovery Rulings

{18} Defendant claims that the district court erred when it entered summary judgment in favor of the Bank before discovery was complete and before it ruled on two discovery motions filed by Defendant. At the time the district court entered summary judgment, the matter had been pending for more than two years. During that time period, Defendant propounded discovery to the Bank and the Bank responded to that discovery more than a year and a half before the hearing on the Bank's motion for summary judgment. Seventeen months after the Bank served its discovery responses on Defendant, and days after the Bank filed its summary judgment motion, Defendant filed a motion asking the court to compel the Bank to provide answers. Defendant, however, failed to advise the court that the Bank had previously served responses. The

13

district court conducted a hearing on Defendant's motion to compel at which time the court directed the Bank to file a sur-reply to the motion to compel further explaining its responses to certain discovery requests and advising that the court would then rule on the pleadings. The Bank filed its sur-reply, providing additional explanation for its discovery objections, but providing no additional information.

{19}     Just a few weeks before the hearing on the Bank's motion for summary judgment, Defendant also served a subpoena duces tecum on Barry L. Martin, a representative of the Bank located in Sioux Falls, South Dakota, instructing Mr. Martin to provide documents related to the Bank's purchase of assets of First Community Bank, including Defendant's loan. The Bank filed a notice of non-appearance, as well as a motion for a protective order and motion to quash the subpoena to Mr. Martin. Finally, in response to the Bank's motion for summary judgment, Defendant repeatedly alleged that he was in need of additional discovery and that he would prove his claims at trial following the completion of discovery. Without conducting a hearing, the district court entered an order on March 10, 2015, denying Defendant's motion to compel and granting the Bank's motion for a protective order and motion to quash the subpoena.

{20}     We review the district court's denial of Defendant's motion to compel and grant of the Bank's motion for protective order and to quash subpoena for abuse of

14

discretion. *Villalobos v. Bd. of Cty. Comm'rs*, 2014-NMCA-044, ¶ 14, 322 P.3d 439 ("We review a district court's discovery orders for an abuse of discretion."). An abuse of discretion occurs when the trial court's ruling is against the facts, logic, and circumstances of the case or is untenable or unjustified by reason. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829. We find no abuse of discretion under the circumstances of this case. Defendant served one set of fairly generic discovery requests on the Bank, which the Bank timely answered. While Defendant challenges the Bank's standing to sue, he chose not to depose or seek additional discovery regarding the individuals whose names appeared on the indorsement of the promissory note or the assignment of mortgage and may have specific knowledge about his loan, instead focusing on the individual who executed documents related to the Bank's purchase of tens of millions of dollars worth of First Community Bank's assets from its receiver and was much less likely to have any knowledge of the transfer of his particular loan to the Bank. Under the circumstances, the district court's decision to deny Defendant's motion to compel and grant of the Bank's motion for a protective order and to quash subpoena is not contrary to the facts, logic, and circumstances of this foreclosure case and will therefore not be disturbed. *See id.*

{**21**}     Finally, Defendant's claim that the district court improperly granted summary judgment before discovery was complete is without merit. Prior to the filing of the

15

Bank's summary judgment motion, Defendant had done limited written discovery and had not sought to depose any other witnesses. While Rule 1-056(F) does provide a mechanism whereby the district court may delay the entry of summary judgment to allow a party to obtain discovery, Defendant failed to submit the required affidavit setting out the specific information he was unable to obtain and the reasons he was prevented from obtaining the evidence essential to justify his position. *See* Rule 1-056(F). The district court's effective denial of additional discovery before granting summary judgment in favor of the Bank, under the circumstances, was not an abuse of discretion. *See Villalobos*, 2014-NMCA-044, ¶ 14.

**B.      Summary Judgment on Defendant's Counterclaims**

{22}      In his counterclaim, Defendant raised claims for slander of title, fraud, interference with contractual relations, and violations of RICO, the HLPA, the UPA, and the Fair Debt Collections Act. In its order granting the Bank summary judgment, the district court also dismissed Defendant's counterclaims with prejudice. On appeal, with the exception of his claim under the HLPA and, by association, his claim under the UPA, Defendant makes mention of some of these claims, but fails to explain why we should reverse the ruling of the district court. This Court will not review an argument that is not adequately developed. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a

16

cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim). "To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. "It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Id.*

**1.	HLPA and UPA Claims**

{23}	Beginning with his answer and counterclaim and continuing through discovery, his response to the Bank's motion for summary judgment, and the summary judgment hearing, Defendant complained that the Bank wrongfully refused to credit his February payment and, instead, returned it to him. Section 58-21A-6(A)(2) (2009) of the HLPA provides as follows:

> A.	Before an action is filed to foreclose or collect money due pursuant to a home loan or before other action is taken to seize or transfer ownership of property subject to a home loan, the creditor or creditor's assignee of the loan shall deliver to the borrower a notice of the right to cure the default informing the borrower of :
>
> . . . .
>
> (2)	the borrower's right to cure the default by paying the sum of money required, provided that a creditor or assignee shall accept any partial payment made or tendered in response to the notice. If the amount necessary to cure the default will change within thirty days of the

17

notice, due to the application of a daily interest rate or the addition of late fees, as allowed by the [HLPA], the notice shall give sufficient information to enable the borrower to calculate the amount at any point within the thirty-day period[.]"

Further, Section 58-21A-4(K)(5) of the HLPA states:

> K.     No creditor shall make a home loan that provides for a late payment fee except as follows:
>
>        . . . . .
>
>        (5)     a creditor shall treat each payment as posted on the same business day as it was received by the creditor, servicer, creditor's agent for making payments or at the address provided to the borrower by the creditor, servicer or creditor's agent for making payments.

The Legislature has provided borrowers with a civil remedy for violations of the HLPA, allowing borrowers to recover actual damages, including consequential and incidental damages, statutory damages equal to two times the finance charge paid under the loan and forfeiture of the remaining interest under the loan, punitive damages for malicious or reckless violations, costs and reasonable attorneys fees, as well as injunctive, declaratory and other equitable relief the court deems necessary to enforce compliance with the HLPA. *See* NMSA 1978, § 58-21A-9(A) (2003). Finally, the HLPA provides that "[a] violation of the [HLPA] constitutes an unfair or deceptive trade practice pursuant to the [UPA]." *See* NMSA 1978, § 58-21A-12 (2003).

{24}     In its motion for summary judgment on Defendant's claims, the Bank correctly argues that Defendant does not have standing to bring claims under the MLCA, which

18

was erroneously cited by Defendant in his counterclaim. The Bank does not address Defendant's claim that the Bank failed to timely credit his payment, and instead, wrongfully rejected it. The Bank's failure is understandable in light of Defendant's erroneous citation to the wrong act. However, in his response to the Bank's motion for summary judgment, Defendant corrects his errant reference to the MLCA and correctly identifies the HLPA, repeating his claim that the Bank failed to credit his payment and wrongfully rejected it and asking for permission to file an amended answer to correct his errors. The Bank's reply fails to address the merits of Defendant's HLPA claims, arguing instead that the erroneous reference to the MLCA requires dismissal of the claim with prejudice. In light of our obligation to "review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute," we conclude that Defendant established a genuine issue of material fact for trial on his HLPA and UPA claims. *See BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7.

{25} While the Bank argues that Defendant failed to preserve his claim that the district court erred when it granted summary judgment on his HLPA claims, we disagree. In his counterclaim and in his discovery responses, Defendant pointed to the Bank's obligation to immediately credit payments received, quoting from the correct

19

statute, but referring to the wrong one. In response to the Bank's motion for summary judgment and at the hearing on that motion, Defendant corrected his error and argued that the Bank's rejection of his payment was a violation of the HLPA, a claim, the Bank concedes, Defendant raised again when he sought to amend his counterclaim. Thus, Defendant properly preserved his claim that the district court erred when it granted summary judgment on Defendant's HLPA and UPA claims. *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).

## C.      The District Court's Failure to Rule in Sixty Days

{26}      Finally, Defendant argues that the district court erred when it filed summary judgment in favor of the Bank more than sixty days after the matter was taken under advisement, contrary to Rule 1-054.1. The Bank responds that any failure to comply with Rule 1-054.1 was harmless error. We agree with the Bank.

{27}      The hearing on the Bank's motion for summary judgment was held on November 12, 2014, at the conclusion of which the district court announced its ruling granting the Bank's motion for summary judgment in its entirety. Almost four months later, on March 3, 2015, the summary judgment was filed. Defendant argues that the

20

district court's delay in the entry of summary judgment had a two-fold effect. First, he argues that the delay interfered with his ability to file his motion for reconsideration. Second, he claims the court's failure to hold a hearing and rule on his motion to amend his complaint and lag in the entry of the judgment forced him to file a separate complaint against the Bank for violations of the HLPA to avoid running afoul of the statute of limitations on those claims.

{28} Neither argument offered by Defendant is persuasive. As the district court announced its ruling at the conclusion of the hearing, disposing of the case in its entirety, Defendant was free to file his motion for reconsideration or take whatever steps he felt appropriate at any time thereafter. While Defendant fails to tell us what relief he believes is appropriate in light of the district court's failure to file its judgment within the sixty-day time frame set out in Rule 1-054.1, our rules are clear that judgments and orders will not be vacated, modified or otherwise disturbed "unless refusal to take such action appears to the court inconsistent with substantial justice," and "[t]he court . . . must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rule 1-061 NMRA. Further, "[a] party must show prejudice before reversal is warranted." *El Paso Elec. Co. v. Real Estate Mart, Inc.*, 1982-NMCA-117, ¶ 25, 98 N.M. 570, 651 P.2d 105. We see no prejudice

or harm to the substantial rights of Defendant and will not disturb the district court's judgment absent such a showing.

**CONCLUSION**

{29}    With the exception of the entry of summary judgment on Defendant's claims under the HLPA and the UPA, we affirm the district court's grant of summary judgment in favor of the Bank. Defendant's claims under the HLPA and UPA are remanded to the district court for further proceedings consistent with this opinion.

{30}    **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**