This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38703

**LSF9 MASTER PARTICIPATION TRUST,**

Plaintiff-Appellant,

v.

**DOUGLAS L. CAIN; THE UNKNOWN SPOUSE OF DOUGLAS L. CAIN; CITIBANK SOUTH DAKOTA, N.A.; DONALD L. HASTIE; and AMERICAN EXPRESS CENTURION BANK,**

Defendants-Appellees,

and

**NEW MEXICO HOME PROTECTION AGENCY, LLC,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Judge**

Rose L. Brand & Associates, P.C.
Eraina M. Edwards
Albuquerque, NM

Houser LLP
Solomon S. Krotzer
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     LSF9 Master Participation Trust (LSF9) appeals the district court's denial of its motion to reconsider the district court's denial of summary judgment and dismissal of LSF9's complaint. We reverse and remand.

## BACKGROUND

**{2}**     In 2016, Wells Fargo Financial New Mexico, Inc. (Wells Fargo) filed a complaint for foreclosure of a mortgage securing a promissory note executed by Douglas Cain and Donald Hastie (Homeowners). Wells Fargo alleged that the note had been lost but that it was entitled to enforce the note at the time the loss of possession occurred. In support of this allegation, Wells Fargo attached a lost note affidavit and a copy of the note, which reflected that it was payable to Wells Fargo. Wells Fargo later filed an unopposed motion to substitute LSF9 as Plaintiff pursuant to Rule 1-025(C) NMRA, asserting that the mortgage had been assigned to LSF9 and that all files regarding the note and mortgage had been transferred to LSF9.

**{3}**     LSF9 then filed an unopposed motion for default judgment. The district court denied LSF9's motion, and ordered LSF9 to file a motion for summary judgment that included additional briefing on the lost note affidavit. LSF9 subsequently filed an unopposed motion for summary judgment, arguing that pursuant to NMSA 1978, Section 55-3-309(a) (1992), Wells Fargo had established standing to enforce the lost note at the time it filed its complaint for foreclosure. While the plain language of Section 55-3-309 appeared to provide that only the party who lost the instrument can subsequently enforce it, LSF9 argued the official comments to Section 55-3-309 directly rejected this conclusion. LSF9 also asserted that no indorsement to the note was necessary where the original note has been lost because the lost note affidavit satisfied the requirement of proving the terms of the note and the right to enforce the note.

**{4}**     After a hearing on the motion for summary judgment, the district court denied LSF9's motion, found that the copy of the note was not endorsed, and found that LSF9 lacked standing to bring the foreclosure action, and dismissed the case. LSF9 filed a motion to reconsider, arguing that Wells Fargo established standing at the time of filing and that substitution as the named Plaintiff did not divest LSF9 of standing. The district court denied the motion to reconsider, finding that LSF9 could not enforce the lost note because: (1) Wells Fargo failed to properly endorse and legally transfer the note to LSF9; and (2) regardless, under Section 55-3-309, LSF9 was not the person who was entitled to enforce the instrument when loss of possession occurred. This appeal followed.

## DISCUSSION

**{5}**     As to the issue of standing, LSF9 argues that Wells Fargo established standing by way of the lost note affidavit and that there is no evidence in the record that Wells Fargo, the party in possession at the time of the loss and the loan originator, did not have the rights to enforce the lost note. LSF9 asserts that a transfer of enforcement rights to a note and underlying mortgage during a foreclosure proceeding does not

revoke standing established by the original plaintiff, and that LSF9 "did not need to prove its own standing" when the note and mortgage were transferred because it assumed the litigation position of Wells Fargo.

**{6}** Because the note at issue was lost, we begin by examining whether Wells Fargo established standing and then determine whether LSF9 is entitled to enforce it pursuant to Section 55-3-309. This presents us with questions of standing and statutory construction, which are questions of law that we review de novo. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 10, 309 P.3d 1047 (stating that issues of statutory construction present questions of law that appellate courts review de novo); *Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803 ("The determination of whether a party has standing to sue is a question of law, which we review de novo.").

**Wells Fargo's Standing**

**{7}** Because foreclosure actions originated at common law, standing in foreclosure cases is a prudential concern. *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶ 21, 390 P.3d 174. Under New Mexico's Uniform Commercial Code (UCC), a plaintiff may establish standing to foreclose in three scenarios: (1) when that plaintiff is the holder of the note; (2) when that plaintiff is a nonholder in possession of the note with the rights of the holder; and (3) when that plaintiff does not possess the note, but is still entitled to enforce subject to the lost-instrument provisions of UCC Article 3. *See* NMSA 1978, § 55-3-301 (1992); *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 14, 369 P.3d 1046. Therefore, if a lender attaches a note indorsed in blank to its initial complaint, the lender is entitled to a presumption that it can enforce the note at the time of filing and establish standing. *Johnston*, 2016-NMSC-013, ¶ 25. Pursuant to the lost-instrument provisions, a lender may also establish standing if:

> (i) the [lender] was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the [lender] or a lawful seizure, and (iii) the [lender] cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Section 55-3-309(a). A lender seeking to enforce a lost note must also prove the terms of the instrument and its right to enforce the instrument. Section 55-3-309(b).

**{8}** Here, Wells Fargo attached a lost note affidavit and a copy of the original note to its amended complaint. The lost note affidavit reflects that: (1) Homeowners executed the original note to Wells Fargo; (2) Wells Fargo did not pledge or assign the note to another; (3) the note had been inadvertently lost; and (4) Wells Fargo had conducted a diligent search for the note, but it could not be located. The copy of the note reflects that it was executed by Homeowners and is payable to Wells Fargo. Wells Fargo has

therefore satisfied the requirements of Section 55-3-309(a)-(b) and has demonstrated that it was entitled to enforce the note despite the note's inadvertent loss.

**{9}**     We therefore hold that the original Plaintiff, Wells Fargo, demonstrated standing. We now turn to whether LSF9 has standing as an assignee, which depends on whether Section 55-3-309 allows it to enforce the note.

**LSF9's Standing**

**{10}**     LSF9 advances several arguments in favor of determining that Section 55-3-309 contemplates that a lost note may be enforceable by an assignee, including that: (1) the plain language of the statute supports enforcement by assignee; (2) the New Mexico UCC must be liberally construed and applied to simplify, clarify and modernize commercial transaction law, permit the expansion of commercial practices, and make law uniform among various jurisdictions; and (3) public policy considerations including freedom of contract and a lack of statutory and policy prohibitions on the right to enforce a lost note support an assignee's right to enforce. Based on our recent holding in *CitiMortgage, Inc. v. Garcia*, ___-NMCA-___, ___ P.3d ___ (No. A-1-CA-38418, July 20, 2022), we hold that LSF9 has standing to enforce the lost note, and we explain.

**{11}**     In *CitiMortgage*, the original lender filed a complaint for foreclosure and asserted standing under Section 55-3-309 due to a lost note. *CitiMortgage*, ___-NMCA-___, ¶ 2. The original lender transferred the right to enforce the note and mortgage to a second lender during the foreclosure action, requiring this Court to interpret Section 55-3-309 and resolve whether the second lender could enforce the note. *Id.* ¶¶ 2-5. We determined that the plain language of the statute did not indicate "whether the assignment of a lost instrument by a person who meets [the conditions of Section 55-3-309] carries with it the right of enforcement." *Id.* ¶ 9. We therefore turned to canons of statutory construction and examined the purpose of the UCC as a whole, and held that under the UCC's directive to construe its provisions liberally, "the rule that an assignee stands in the assignor's shoes supplements Section 55-3-309 so that assignment of a lost instrument carries with it any entitlement to enforce belonging to the assignor." *Id.* ¶ 12.

**{12}**     Here, we are faced with a substantially similar set of facts[1] as in *CitiMortgage*: Wells Fargo, like the original *CitiMortgage* plaintiff, based its standing on its ability to foreclose at the time of loss and transferred its enforcement rights to another lender after initiating the foreclosure action.[2] *Id.* ¶ 2. We understand that the district court did

---

1We observe that the only significant difference between this case and *CitiMortgage* is that no Defendant objects to this foreclosure. Neither Homeowners nor the junior lienholders entered an appearance and the New Mexico Home Protection Agency stipulated to the foreclosure and maintains on appeal that it is not an aggrieved party and has no standing. Therefore, unlike in *CitiMortgage*, no party contests LSF9's standing to foreclose, and this issue is only before us due to the district court's sua sponte action.
2As part of its finding that LSF9 lacked standing, the district court found that the note contained no endorsement that would have allowed LSF9 to demonstrate standing by possession alone. However, if the note was lost, it necessarily could not be indorsed in blank or otherwise endorsed. A lack of

not have the benefit of *CitiMortgage* when it determined that LSF9 was not entitled to enforce under Section 55-3-309. However, our holding in *CitiMortgage* clarifies that an assignee like LSF9 is entitled to enforce a lost instrument under these circumstances. Therefore, for the reasons articulated in *CitiMortgage*, we determine that LSF9 has standing to enforce the lost note and hold that the district court erred as a matter of law when it determined otherwise. *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236.

**CONCLUSION**

**{13}** For the reasons stated above, we reverse the district court's order denying LSF9's motion to reconsider, and remand with instructions to enter summary and default judgment in favor of LSF9.

**{14} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**

---

endorsement does not change our holding in this matter because Wells Fargo proved standing, pursuant to Section 55-3-309.